United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DORA LEE,

    Plaintiff,

    v.

POSTMATES INC.,

    Defendant.

Case No. 18-cv-03421-JCS

**ORDER REGARDING MOTION TO COMPEL ARBITRATION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Re: Dkt. Nos. 14, 15

## I.    INTRODUCTION

In this putative class action regarding alleged employee misclassification, Defendant Postmates Inc. seeks to compel arbitration of Plaintiff Dora Lee's claims under the Federal Arbitration Act ("FAA"), and Lee seeks leave to amend her complaint to add two additional named plaintiffs and a more explicit claim for public injunctive relief.  The Court held a hearing on October 12, 2018.  For the reasons discussed below, both motions are GRANTED, except that the Court DENIES Postmates' motion to the extent that it requests a stay of new plaintiffs Kellyn Timmerman and Joshua Albert's claims pending the resolution of Lee's arbitration.[1]

## II.   BACKGROUND

### A.    Claims of the Complaint

Lee alleges that she worked as a courier for Postmates delivering "food and other merchandise to [Postmates'] customers at their homes and businesses."  Compl.[2] ¶ 8.  She claims that Postmates willfully misclassified her and other drivers as independent contractors rather than employees, failed to pay minimum wage and reimburse expenses as required by the California

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).
[2] The complaint, originally filed in state court prior to removal, appears in the record here as pages 7 through 15 of ECF docket entry 1-1, within Exhibit B to the declaration of Theane Evangelis.

Labor Code, and in doing so, engaged in unlawful business practices in violation of California's

Unfair Competition Law (the "UCL"). *Id.* ¶¶ 30–33. Lee seeks to represent a class of similarly

situated Postmates couriers. *See id.* ¶¶ 21–29.

### B. The Fleet Agreement

Postmates requires its couriers to agree to its "Fleet Agreement" before they can make

deliveries. Cartes Decl. (dkt. 14-1) ¶ 4. According to Postmates' records, Lee agreed to a 2017

version of the Fleet Agreement (Cartes Decl. Ex. B) when she signed up to work for Postmates in

March of that year, and agreed to an amended version of the Fleet Agreement in 2018 (Cartes

Decl. Ex. C). *See* Cartes Decl. ¶¶ 7, 9. The two versions of the Fleet Agreement are substantively

identical for the purpose of the present motion. *See* Cartes Decl. Exs. B, C. The portion of the

Fleet Agreement relevant here is section 11, the "Mutual Arbitration Provision," which requires

the parties to arbitrate all disputes under the Federal Arbitration Act, including most threshold

questions regarding the applicability of the arbitration provision. Cartes Decl. Ex. B § 11A(i)–(ii).

Within the section addressing arbitration, the agreement also includes a waiver of class and

representative actions:

> CLASS ACTION WAIVER—PLEASE READ. Postmates and
> Contractor mutually agree that any and all disputes or claims between
> the parties will be resolved in individual arbitration. The Parties
> further agree that by entering into this Agreement, they waive their
> right to have any dispute or claim brought, heard, or arbitrated as a
> class and/or collective action, or to participate in any class and/or
> collective action, and an arbitrator shall not have any authority to hear
> or arbitrate any class and/or collective action ("Class Action
> Waiver").

*Id.* § 11B(ii); *see also id.* § 11B(iii) (including substantially identical language pertaining to "any

representative action"). Unlike other threshold questions of arbitrability, which the Fleet

Agreement states themselves must be arbitrated, any claim that the class or representative action

waiver is unenforceable or void must be determined by a court, and cannot be determined by an

arbitrator. *Id.* § 11B(iv).

The Fleet Agreement provides couriers the right to opt out of the arbitration requirement

within thirty days after they digitally execute the Fleet Agreement. *Id.* § 11B(ix). Modifications

to the Fleet Agreement do not provide a renewed opportunity to opt out of arbitration unless

United States District Court
Northern District of California

Postmates modifies the arbitration provision. *Id.*

### C. Parties' Arguments

#### 1. Postmates' Motion to Compel Arbitration and Stay Proceedings

Postmates argues that Lee's claims must be arbitrated because when Lee signed up to make deliveries for Postmates, she signed Postmates' Fleet Agreement, which included an arbitration clause that applies to all claims between the parties, explicitly including claims related to Lee's classification as an independent contractor. Mot. to Compel (dkt. 14) at 1–3. The arbitration clause also includes an explicit waiver of Lee's right to have disputes resolved through a class action, and instead states her agreement to resolve all disputes through individual arbitration. *Id.* at 3 (citing Cartes Decl. Ex. B § 11B(ii), Ex. C § 11B(ii)). According to Postmates, Lee did not opt out of the arbitration provision within the thirty days allowed under the Fleet Agreement. *Id.* at 3–4. Postmates contends that Lee's claims are governed by the Federal Arbitration Act, and that pursuant to the terms of the Fleet Agreement, even "gateway" questions regarding the scope and application of the arbitration clause are to be decided by an arbitrator. *Id.* at 6–7. Postmates argues that the arbitration clause and class action waiver of the Fleet Agreement are valid and apply to all of Lee's claims, but that if the Court determines that any claims are not subject to arbitration, they must be stayed until arbitration is concluded. *Id.* at 7–11.

Lee argues that if she is permitted to amend her complaint to add Kellyn Timmerman and Joshua Albert as additional named plaintiffs, the fact that (according to Lee) they validly opted out of the arbitration clause should be imputed to other putative class members including Lee herself based on the Georgia Supreme Court's decision in *Bickerstaff v. Suntrust Bank*, 299 Ga. 459 (2016). Opp'n to Arbitration (dkt. 16) at 5–8. Lee also contends that she and other Postmates couriers are exempt from the FAA based on an exception for transportation workers engaged in interstate commerce, codified at 9 U.S.C. § 1, because the statutory language regarding "employment contracts" is not limited to employees rather than independent contractors—or even if it is, the couriers are in fact employees—and because the couriers are sufficiently engaged in commerce by delivering items that may have originated out of state. Opp'n to Arbitration at 9–18. Lee argues, based on the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 2 Cal.

5th 945 (2017), that the arbitration clause is invalid to the extent that it purport to bar claims for public injunctive relief under the UCL, Opp'n to Arbitration at 18–20, and finally asserts that the motion should be denied because couriers did not have sufficient notice of the arbitration clause to have provided valid consent to such an agreement, *id.* at 20–24 (relying primarily on *Cullinane v. Uber Techs., Inc.*, 893 F.3d 52 (1st Cir. 2018) (applying Massachusetts law)).

Postmates renews its argument in its reply that the arbitration clause of the Fleet Agreement covers all of the claims at issue.  Reply re Arbitration (dkt. 23) at 2–3.  Postmates contends that adding Timmerman and Albert as additional plaintiffs would not affect Lee's claims, and that the Georgia Supreme Court's *Bickerstaff* decision is inapplicable here and inconsistent with the FAA.  *Id.* at 4–6.  According to Postmates, the transportation worker exception to the FAA does not apply because couriers are not sufficiently engaged in interstate commerce and because as independent contractors they do not have "employment contracts," although Postmates asks that if the Court consider the latter issue dispositive, the Court should withhold a decision until the Supreme Court decides a pending case that will likely resolve whether independent contractors fall within the exception.  *Id.* at 6–9.  Postmates also argues that—contrary to Ninth Circuit authority—the question of whether the exception applies is for the arbitrator to decide, and again asks this Court to withhold a decision on that issue until the Supreme Court addresses it.  *Id.* at 9–10.  If the exception does not apply to independent contractors, Postmates contends that this Court cannot determine as a threshold matter that the couriers are employees, because doing so before class certification would improperly allow potential class members to choose whether to opt out of the class after a significant decision on the merits has been resolved.  *Id.* at 10–11. Postmates also argues that Lee does not and cannot seek public injunctive relief under the UCL and the FAA, and that she validly assented to the Fleet Agreement and its arbitration provision. *Id.* at 11–15.  Postmates again asks the Court to stay any remaining claims pending arbitration.  *Id.* at 15.

## 2.  Lee's Motion for Leave to File an Amended Complaint

Lee seeks to file a first amended complaint naming Kellyn Timmerman and Joshua Albert as additional plaintiffs and putative class representatives, so that the class claims may proceed

United States District Court
Northern District of California

even if Lee is required to arbitrate her own claims. *See generally* Mot. to Amend (dkt. 15). Lee asserts in her motion—but presents no evidence to support—that Timmerman and Albert opted out of the arbitration requirement of their contract with Postmates. *See id.* at 4–5. She argues that amendment should be permitted because there has been no undue delay or bad faith, amendment would cause no prejudice to Postmates, and amendment would not be futile because Timmerman and Albert are not required to arbitrate their claims. *Id.* at 4–6. The proposed amended complaint also includes language explicitly seeking "public injunctive relief," which Lee contend that she herself may pursue outside of arbitration based on the California Supreme Court's decision in *McGill*. *See* Mot. to Amend at 3 n.2.

Postmates argues that leave to amend should be denied because amendment would be futile, Postmates would be prejudiced, Lee lacks a good-faith basis for amendment, and any claims that are not subject to arbitration should be stayed pending arbitration of other claims. *See generally* Opp'n to Amendment (dkt. 22). Lee renews the arguments of her motion in her reply, and argues that there is no basis to stay Timmerman and Albert's claims even if Lee is required to arbitrate. *See generally* Reply re Amendment (dkt. 25).

## III.     ANALYSIS OF MOTION TO COMPEL ARBITRATION AND STAY

### A.     Legal Standard

Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because arbitration is a matter of contract, the question of arbitrability is, in principle, an issue for judicial determination. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). The court's role in addressing a question of arbitrability is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court finds that both of these requirements are met, the FAA requires it to enforce the provision in accordance with its terms. *Id.*

United States District Court
Northern District of California

1   The FAA "was created to counter prevalent judicial refusal to enforce arbitration

2   agreements . . . and has been interpreted to embody 'a liberal federal policy favoring arbitration.'"

3   *Mortenson v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (quoting *Moses H.*

4   *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and citing *AT&T Mobility*

5   *LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  Thus, the Supreme Court has held that "any

6   doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether

7   the problem at hand is the construction of the contract language itself or an allegation of waiver,

8   delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.  Nonetheless,

9   "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only*

10  *those disputes*—that the parties have agreed to submit to arbitration."  *Granite Rock Co. v. Int'l*

11  *Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted).  Consequently,

12  courts may apply the "presumption favoring arbitration . . . only where it reflects, and derives its

13  legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties

14  intended because their express agreement to arbitrate was validly formed and . . . is legally

15  enforceable and best construed to encompass the dispute." *Id.* at 303.  Even where such a

16  presumption arises, the Court explained, arbitration should be ordered only if the presumption is

17  not rebutted.  *Id.* at 301.  Where the presumption applies, courts "compel arbitration 'unless it may

18  be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

19  covers the asserted dispute.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 746 (9th Cir.

20  2014) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)

21  (internal quotation marks and citation omitted)).

22   The Supreme Court in *Granite Rock* explained that the presumption in favor of arbitration

23  "is merely an acknowledgment of the FAA's commitment to 'overrule the judiciary's

24  longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the

25  same footing as other contracts.'"  561 U.S. at 299 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of*

26  *Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).  The Supreme Court continued, "we

27  have never held that this policy overrides the principle that a court may submit to arbitration 'only

28  those disputes . . . that the parties have agreed to submit.' . . . Nor [has the Court] held that courts

1    may use policy considerations as a substitute for party agreement."  *Id*. (quoting *First Options of*

2    *Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

3           Where the parties "clearly and unmistakably" indicate their intent to do so, an agreement

4    may delegate "threshold issues" of arbitrability, including the "enforceability, revocability or

5    validity" of an arbitration clause, to the arbitrator rather than to a court.  *See Mohamed v. Uber*

6    *Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (citations omitted).

7           As a general rule, courts apply state contract law in determining the validity and scope of

8    an arbitration agreement.  *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).

9    Thus, in determining whether there is a valid agreement to arbitrate, "courts must 'apply ordinary

10   state-law principles that govern the formation of contracts.'"  *Id*. (quoting *First Options*, 514 U.S.

11   at 944).  The parties do not dispute that California law governs the Fleet Agreement as applied to

12   Lee.  *See, e.g.*, Opp'n to Arbitration at 23–24; Reply re Arbitration at 13.  The Court therefore

13   looks to California law in addressing whether a valid agreement to arbitrate exists between Lee

14   and Postmates and (assuming it does) whether Lee's claim falls within the scope of that

15   agreement.

16           **B.      Lee Agreed to the Fleet Agreement and Arbitration Clause**

17           According to Postmates' records, Lee agreed to the 2017 version of the Fleet Agreement

18   on March 27, 2017, and agreed to the updated 2018 version of the Fleet Agreement on May 15,

19   2018.  Cartes Decl. ¶¶ 6–9 & Ex. A (spreadsheet indicating Lee's acceptance of the agreement),

20   Ex. B (2017 Fleet Agreement), Ex. C (2018 Fleet Agreement).  Postmates employs a "'click-

21   through' process" in which prospective couriers "are presented with a link to the Fleet Agreement"

22   during the process of signing up to make deliveries for Postmates, and must click either "Agree"

23   or "Dismiss" before moving to the next step.  Campbell Reply Decl. ¶¶ 14–16.  Couriers who

24   accept the agreement are emailed a copy of it and may also access it in the Postmates "Fleet App"

25   after they sign up, and must follow the same process when Postmates updates its Fleet Agreement.

26   *Id.* ¶¶ 17–18.

27           Notwithstanding Lee's citation to authority requiring "conspicuous" notice of contract

28   terms and "unambiguous manifestation of assent" under Massachusetts law, *see* Opp'n to

Arbitration at 20–21 (citing *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018)), courts applying California law have typically held that procedures like the one employed by Postmates here are sufficient to establish contract formation. *E.g., Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (collecting district court decisions). Lee has submitted no evidence that she did not assent to or did not understand the Fleet Agreement. Although Postmates should not have waited until its reply brief to submit some of the evidence supporting the existence of a contract, *see generally* Campbell Reply Decl., there does not appear to be any real factual dispute on this issue.

Lee also did not affirmatively opt out of the 2017 Fleet Agreement's arbitration clause, which she could have done within thirty days of accepting the 2017 Fleet Agreement. Cartes Decl. ¶ 10 & Ex. B ¶ 11B(ix). The Fleet Agreement does not provide a renewed opportunity to opt out when changes are made to the agreement unless such changes materially affect the arbitration clause, which Lee has not argued is the case here.[3] *Id.* Ex. B ¶ 11B(ix); *compare id.* Ex. B (2017 Fleet Agreement) ¶ 11B *with id.* Ex. C (2018 Fleet Agreement, reflecting materially identical arbitration terms) ¶ 11B. Thus, although Lee attempted to opt out of the 2018 Fleet Agreement on May 22 and 23, 2018, she was not permitted to do so at that time. Campbell Reply Decl. ¶ 9.

At the hearing, Lee's counsel raised for the first time arguments that Postmates acted improperly in presenting the 2018 Fleet Agreement to Lee directly when she was represented by counsel and had filed this action, that the 2017 Fleet Agreement was limited to a one-year term, and that Lee's attempt to opt out of arbitration should have been effective. None of those arguments are included in Lee's opposition brief. Counsel contended that the arguments were proper because Postmates presented for the first time with its reply brief evidence regarding the nature of the Fleet Agreement acceptance process and the fact that Lee attempted to opt out in 2018. That contention is unavailing. It is true that some of the evidence presented with

---

[3] Lee also has not challenged whether such a framework, preventing a worker from opting out of arbitration even when other aspects of the contract change, is permissible under California law and the FAA.

1    Postmates' reply doubtless should have been included with its motion, and Postmates should not

2    have incorrectly—or perhaps misleadingly—asserted that Lee never opted out, at least without

3    acknowledging her attempt to opt out in 2018. *See* Cartes Decl. ¶ 10. Nevertheless, the text of

4    both the 2017 and 2018 Fleet Agreements were presented with the motion, as was the assertion

5    that Lee accepted the 2018 Fleet Agreement on May 15, 2018. Cartes Decl. ¶ 9 & Exs. B, C.

6    Lee's attempt to opt out, while not addressed in Postmates' motion or accompanying declaration,

7    is of course within Lee's own knowledge. Lee therefore waived the arguments raised for the first

8    time at the hearing by failing to address them in her brief.

9         Based on the evidence submitted by Postmates and the lack of evidence to the contrary

10   from Lee, the Court concludes for the purpose of this order that, under California law, Lee validly

11   consented to the Fleet Agreement and its arbitration provision, and did not effectively opt out of

12   that provision.

13       **C.    Lee May Not Avoid Arbitration Based on Other Putative Class Members**

14        Lee may not avoid arbitration on the basis that other putative class representatives opted

15   out of the arbitration agreement, when Lee herself did not. In the decision on which Lee relies for

16   that proposition, the Georgia Supreme Court held in *Bickerstaff v. Suntrust Bank* that the filing of

17   a class action complaint tolled the deadline for putative class members to opt out of an arbitration

18   requirement, analogizing to precedent tolling statutes of limitations. *See generally* 299 Ga. 459

19   (2016). Notably, the Georgia court rested its decision on the fact that the lead plaintiff filed his

20   complaint "within the deadline for rejecting arbitration for existing depositors, the class [he] seeks

21   to represent," and the complaint could therefore be viewed as tolling the deadline from the date of

22   filing. *See id.* at 469. Here, the deadline for Lee to opt out of the Fleet Agreement's arbitration

23   clause has passed, and under the logic of *Bickerstaff* the filing of a new complaint now by

24   someone who opted out of arbitration could no more save Lee's claim than it could revive the

25   claims of someone for whom the statute of limitations already expired.

26        Regardless, the Ninth Circuit has rejected Lee's proposed application of *Bickerstaff* in a

27   precedential opinion issued after the close of briefing in this case. *See* Statement of Recent

28   Decision (dkt. 27); *O'Connor v. Uber Techs., Inc.*, __ F.3d __, Nos. 14-16078 et al., 2018 WL

4568553, at *4, 2018 U.S. App. LEXIS 27343, at *12–13 (9th Cir. Sept. 25, 2018).  Lee's criticism of that decision and desire to preserve the issue in the event that the decision is reversed en banc are noted.  *See* Case Mgmt. Statement (dkt. 28) at 7 & n.3.  However, because this Court is bound by *O'Connor*—and agrees with its reasoning—the addition of other plaintiffs in the proposed amended complaint is not relevant to whether Lee's claims must be arbitrated.

### D.    The Transportation Workers Exception

The statutory language of the FAA excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C § 1.  The Supreme Court has interpreted this exception as governing "only contracts of employment of transportation workers."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).  A court must "assess whether a Section 1 exemption applies before ordering arbitration"; the parties' agreement may not delegate that question to an arbitrator.  *In re Van Dusen*, 654 F.3d 838, 846 (9th Cir. 2011); *see also Van Dusen v. Swift Transp. Co., Inc.*, 544 F. App'x 724 (9th Cir. 2013) (explaining that *In re Van Dusen* is precedential "law of the circuit" even though that opinion denied a petition for mandamus to reverse the district court's error).[4]  The parties dispute two aspects of the scope of this exception: whether a worker must be an employee rather than an independent contractor in order to have an "employment contract," and whether Lee was among a class of workers "engaged in . . . interstate commerce."

#### 1.  Employment Contract Requirement

The Ninth Circuit applied the § 1 exception and the rule of *Circuit City* in *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137 (9th Cir. 2001), holding that a truck driver employed to deliver packages "throughout the United States" was exempt from the FAA as a "transportation

---

[4] There is some disagreement among the courts of appeals on this issue.  *See Oliveira v. New Prime, Inc.*, 857 F.3d 7, 12–15 (1st Cir. 2017) (following the Ninth Circuit's approach, but noting that the Eighth Circuit reached the opposite conclusion in *Green v. Supershuttle Int'l, Inc.*, 653 F.3d 766 (8th Cir. 2011)), *cert. granted*, 138 S. Ct. 1164 (2018).  Postmates therefore argues that "*Van Dusen* is not sound precedent" and was "wrongly decided."  Reply re Arbitration at 9–10.  Regardless of its merit, *Van Dusen* is binding on this Court—and as with *O'Connor*, this Court also agrees with its reasoning.  While the Supreme Court will likely decide the matter conclusively in its review of the First Circuit's *Oliveira* decision, this Court will not wait for that opinion to proceed with this case.

United States District Court
Northern District of California

worker[] . . . engaged in interstate commerce." 249 F.3d at 1140. The defendant in that case argued that the driver was not exempt because he was an independent contractor, and therefore not subject to an "employment contract," but the court declined to consider that argument because the defendant raised it for the first time on appeal. *Id.* at 1141.

The First Circuit addressed that question in *Oliveira v. New Prime, Inc.*, 857 F.3d 7 (1st Cir. 2017), holding that despite the majority of district court decisions declining to apply to exception to independent contractors, most such decisions had not examined the issue in detail, and the plain language of the statute as used at the time of enactment in 1925 counseled in favor of applying the exception to independent contractors as well as employees. 857 F.3d at 15–24 & n.20 (citing, among many other examples, a 1925 Supreme Court of Oklahoma decision stating that "the contract of employment between Tankersley and Casey was admitted in evidence without objections, and we think conclusively shows that Casey was an independent contractor," *Tankersley v. Webster*, 243 P. 745, 747 (Okla. 1925)). The Supreme Court granted certiorari in *Oliveira* and heard argument on October 3, 2018. *See New Prime Inc v. Oliveira*, 138 S. Ct. 1164 (2018) (granting certiorari).

Here, Postmates argues that independent contractors are not encompassed by the exception based in part on Black's Law Dictionary, which defines an "employment contract" as a "contract between an employer and an employee," but Postmates asks to Court to wait for the Supreme Court to decide *Oliveira* if the issue would be dispositive. Reply re Arbitration at 8–9. Because the Court holds below that Lee has not established that the interstate commerce requirement is satisfied, the Court need not resolve the meaning of "employment contract" to hold that the transportation worker exception does not apply.

### 2. Interstate Commerce Requirement

In rejecting an expansive view of the phrase "engaged in . . . interstate commerce" as mirroring the full extent of Congress's power to legislate under the Commerce Clause—and thus encompassing most if not all employment contracts—the Supreme Court described the reach of the § 1 exception as including "only contracts of employment of transportation workers." *Circuit City Stores*, 532 U.S. at 119. The Court did not meaningfully elaborate in that opinion on what

degree of connection "transportation workers" must have to interstate commerce, or whether they must be employees rather than contractors, although it noted "Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods," and described the exception as encompassing "those engaged in transportation." *Id.* at 121. The Court noted the District of Columbia Circuit's definition, requiring that workers be "'actually engaged in the movement of goods in interstate commerce,'" as one example of a definition more restrictive than the expansive view untethered to transportation that the Court rejected, but did not clearly adopt that definition as its own. *See id.* at 112 (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997)).

The Seventh Circuit has stated as its test that an employment contract must contemplate that transportation workers will cross state lines for at least some of their work, even if only a small portion of it, to fall within the exception, *see Int't B'hood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 957–58 (7th Cir. 2012), although the requirement of crossing state lines is arguably dicta, as this Court is aware of no Seventh Circuit decision addressing transportation workers who made exclusively intrastate deliveries. Some district court decisions have also held that local delivery drivers who do not cross state lines are not "engaged in . . . commerce" within the meaning of the statute. *E.g. Vargas v. Delivery Outsourcing, LLC,* No. 15-cv-03408-JST, 2016 WL 946112, at *3–5 (N.D. Cal. Mar. 14, 2016); *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1152–55 (N.D. Cal. 2015). Judge Laporte's decision in *Levin* also relied on the fact that the couriers in that case delivered prepared meals, and that any ingredients ultimately sourced from out of state "ended their interstate journey when they arrived at the restaurant where they were used to prepare meals." *Levin*, 146 F. Supp. 3d at 1154.

The Fifth Circuit has held that because the statute enumerates "seamen" and "railroad employees" separately from "other classes of workers engaged in . . . commerce," a seaman's employment contract is exempt from the FAA even if the seaman is not engaged in commerce. *See generally Brown v. Nabors Offshore Corp.*, 339 F.3d 391 (5th Cir. 2003). The reasoning of that decision would not extend to Lee, who is neither a "seaman" nor a "railroad employee," and thus must establish at least some connection to interstate commerce.

United States District Court
Northern District of California

Somewhat more helpful to Lee is the Third Circuit's decision in *Palcko v. Airborne Express, Inc.*, where the court held that the exemption included a supervisor of truck drivers and was not "limited to those truck drivers who physically move the packages," but even there, the defendant employer was in the business of interstate and international deliveries.  372 F.3d 588, 590–94 (3d Cir. 2004).  While not entirely clear from the court's opinion, it also seems likely that the drivers under the Plaintiff's supervision crossed state lines in the course of "deliver[ing] packages from Airborne's facility near the Philadelphia International Airport to their ultimate destinations in the Philadelphia area," given the proximity of Philadelphia to the neighboring states of Delaware and New Jersey.  *See id.* at 590.  Regardless, the delivery of packages to and from the airport, and thus to or from the defendant's interstate and international cargo flights, establishes a stronger nexus to interstate commerce than is present here.  *See id.*  Perhaps the most favorable circuit decision for Lee is *Bacashihua v.U.S. Postal Serv.*, 859 F.2d 402 (6th Cir. 1988), which held that "the concern was not whether the individual worker actually engaged in interstate commerce, but whether the class of workers to which the complaining worker belonged engaged in interstate commerce," and thus that a postal worker who was not herself "*personally* engaged in interstate commerce" nevertheless fell within the § 1 exception.  859 F.2d at 405.  Lee also cites a District of Colorado decision holding that an armored vehicle driver employed "to transport currency, a good that is undisputedly in the stream of interstate commerce," by a defendant "engaged in the business of interstate transport of currency" was a member of "a class of workers engaged in interstate commerce and is therefore exempt from the FAA pursuant to Section 1," even though there was no evidence that the plaintiff herself ever delivered goods across state lines.  *Christie v. Loomis Armored US, Inc.*, No. 10-cv-02011-WJM-KMT, 2011 WL 6152979, at *3 (D. Colo. Dec. 9, 2011).

The Eighth Circuit, in holding that a customer service representative for a freight company was not a transportation worker subject to the exception, identified seven non-exclusive factors that might be relevant to the inquiry, ranging from whether the plaintiff works in the transportation industry, to whether the plaintiff is "within a class of employees for which special arbitration already existed when Congress enacted the FAA," to "whether a strike by the employee would

disrupt interstate commerce." *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 352 (8th Cir. 2005). The parties here have not addressed those factors in their briefs.

Taken together, while there is some authority holding that a plaintiff need not personally deliver goods across state lines to qualify as a "transportation worker" under § 1 and *Circuit City*, even those cases concern plaintiffs with a much closer connection to interstate commerce than Lee has here. *See Palcko*, 372 F.3d at 590–94; *Bacashihua*, 859 F.2d at 405; *Christie*, 2011 WL 6152979, at *3. Lee has presented no evidence that, like the postal worker in *Bacashihua* or the delivery supervisor in *Palcko*, her job involved handling goods *in the course of interstate shipments*, or that, like the Postal Service and shipping company in those cases, or the armored transportation company in *Christie*, Postmates itself was in the business of transporting goods between states. The Court is aware of no authority holding that couriers who deliver goods from local merchants to local customers are "engaged in . . . interstate commerce" within the meaning of § 1 of the FAA merely because some such deliveries might include goods that were manufactured out of state—a possibility that, while likely here, Lee has also provided no evidence to support.

"A plaintiff opposing arbitration under the FAA has 'the burden of demonstrating the exemption.'" *Vargas*, 2016 WL 946112, at *3 (N.D. Cal. Mar. 14, 2016) (citation omitted); *see also Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1151 (9th Cir. 2008) (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987) for the proposition that the "burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."). Having produced no evidence that the work of Postmates couriers is meaningfully related to the interstate flow of goods, Lee has not met that burden here, and is not exempt from the FAA under the transportation worker exception.

### E.  *McGill* Does Not Bar Arbitration of Public Injunctive Relief

Among the statutory remedies provided by the UCL is "public injunctive relief, i.e., injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017). Lee argues that her complaint includes a request for such relief, and seeks to state that request more

United States District Court
Northern District of California

14

explicitly in her proposed amended complaint.  Opp'n to Arbitration at 18–19 & n.22.

Anticipating that Postmates would construe a claim for public injunctive relief as a representative

action waived by the Fleet Agreement, Lee contends that such a waiver is invalid under the

California Supreme Court's decision in *McGill*.  *Id.* at 19–20.  Postmates argues that the relief Lee

seeks is not in fact "public injunctive relief" as that term has been used by the California courts,

but that if it is, the claim should still be arbitrated because *McGill* is preempted by the FAA.

Reply re Arbitration at 11–13.

 In *McGill*, the California Supreme Court considered an arbitration clause that the parties

agreed "purport[ed] to preclude [the plaintiff] from seeking public injunctive relief in arbitration,

in court, or *in any forum*," and held that the clause was "invalid and unenforceable under state law

insofar as it purports to waive [the plaintiff's] statutory right to seek such relief."  2 Cal. 5th at

956, 961.  The court noted that a request for public injunctive relief does not require a claim to be

brought as a class or representative action, but is instead a remedy available to an individual

private plaintiff, so long as that plaintiff has suffered injury sufficient for standing to bring a

private action under the UCL.  *Id.* at 959.

 The class action waiver in the parties' Fleet Agreement here binds the parties to

"individual arbitration," "waive[s] their right to have any dispute or claim brought, heard or

arbitrated as a class and/or collective action" or "representative action," as well as any right to

participate in such actions, and deprives the arbitrator of authority to arbitrate such actions.  Cartes

Decl. Ex. C § 11B(ii)–(iii).  By its terms, the class action waiver does not prevent the arbitrator

from awarding any form of relief that would be available in individual litigation—to the contrary,

a separate provision of the section of the Fleet Arbitration governing arbitration provides that,

except for the class action waiver, "the arbitrator may award all remedies to which a party is

entitled under applicable law and which otherwise be available in a court of law," although the

arbitrator may not award relief "that would not have been available in a court of law for the claims

presented."  *Id.* § 11B(vi)(4).  Taking into account the California Supreme Court's holding in

*McGill* that a request for public injunctive relief may be brought in an individual private action,

and does not require a class or representative action, the Fleet Agreement therefore does not

United States District Court
Northern District of California

purport to bar Lee from obtaining such relief in arbitration.[5]  *Cf. DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL 2377777, at *2–3 (considering an agreement that permitted an arbitrator to "award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim," and holding that whether such an agreement prohibits the arbitrator from awarding public injunctive relief is a question for the arbitrator to decide).  *McGill* therefore does not prevent Postmates from requiring Lee to arbitrate her claims in this case, because unlike the agreement in *McGill*, the Fleet Agreement here does not bar Lee from obtaining public injunctive relief in any forum.

It is worth noting that after Judge Orrick ordered the plaintiff in *DeVries* to arbitrate his claims, the arbitrator not only determined that the arbitration agreement "states that public injunctive actions cannot be arbitrated," but also interpreted *McGill* as holding that UCL claims for public injunctive relief "should not be arbitrated."  *See DeVries*, ECF Doc. No. 68-1 ¶¶ 2–3 (arbitrator's order dated December 12, 2017, and filed in the Court's docket December 18, 2017). The arbitrator held that the claim for public injunctive relief must therefore proceed in a court of law.  *Id.* ¶ 3.  To the extent that the arbitrator interpreted *McGill* as barring arbitration of public injunctive relief in all cases, even where such relief is not prohibited by the governing arbitration agreement, this Court finds no basis for such an interpretation in the California Supreme Court's opinion, and respectfully disagrees.  The *McGill* court began its analysis from the parties' agreement that their contract prohibited awarding such relief in arbitration, and held that the purported wholesale deprivation of the remedy provided by statute—not any question of what forum might be empowered to award the remedy—rendered the clause invalid.  *See* 2 Cal. 5th at 956; *see also Blair v. Rent-A-Center, Inc.*, No. C 17-02335 WHA, 2017 WL 4805577, at *5 (N.D. Cal. Oct. 25, 2017) ("The rule in *McGill*, in contrast, provides that parties *can* compel public injunctive claims to arbitration. It merely prohibits contracts that waive such claims altogether.")

---

[5] At the hearing, counsel for Postmates noted her view that the relief Lee seeks is not actually "public injunctive relief" and that Lee would face barriers such as lack of standing to pursue such relief, but agreed that the arbitration provision of Fleet Agreement does not in itself prevent an arbitrator from awarding public injunctive relief under the UCL.

United States District Court
Northern District of California

1 (appeal pending, 9th Cir. Case No. 17-17221).

2      An older doctrine of the California Supreme Court, known as the *Broughton-Cruz* rule, in

3 fact prohibited arbitration of claims under the UCL and similar statutes.  *See generally Cruz v.*

4 *PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (2003); *Broughton v. Cigna Healthplans of Cal.*, 21

5 Cal. 4th 1066 (1999).  The Ninth Circuit, however, has held in a published opinion binding on this

6 Court that the *Broughton-Cruz* doctrine is inconsistent with recent decisions of the United States

7 Supreme Court interpreting the FAA, and thus is preempted.  *Ferguson v. Corinthian Colleges,*

8 *Inc.*, 733 F.3d 928, 934–37 (9th Cir. 2013).  In reaching that conclusion, the Ninth Circuit strongly

9 suggested that arbitrators have the authority to enter public injunctive relief against a defendant

10 that has agreed to arbitrate such claims.  *Id.* at 937 (rejecting the *Broughton* court's "conclusion

11 that the public injunction sought by the plaintiffs was 'beyond the arbitrator's power to grant.'"

12 (quoting 21 Cal. 4th at 1079)).  Reading the Fleet Agreement here in conjunction with *McGill* and

13 *Ferguson*, Lee likely can and must arbitrate her claim for public injunctive relief, but at the very

14 least must submit to the arbitrator the question of whether a claim for such relief falls within the

15 arbitrator's authority.

16      Because the Court holds that *McGill* presents no barrier to arbitration here, the Court does

17 not reach Postmates' argument that the rule of *McGill* is preempted by the FAA—and thus

18 implicitly that *McGill*'s own analysis of FAA preemption was wrongfully decided.  *See* Reply re

19 Arbitration at 12–13; *but see Adkins v. Comcast Corp.*, Nos. 16-cv-05969-VC & 17-cv-06477-VC,

20 2018 WL 4846548, at *1 (N.D. Cal. Feb. 15, 2018) ("To the extent that Comcast argues

21 the *McGill* rule is preempted by the Federal Arbitration Act, *McGill* itself explains why it is not.").

22 The Court also declines to consider Postmates' argument that the relief Lee seeks is not, in fact,

23 "public injunctive relief" within the meaning of California law, *see* Reply re Arbitration at 11–12,

24 and instead reserves that question for an arbitrator to decide.

25                         * * *

26      As discussed above, the Court finds no basis to decline to enforce the parties' arbitration

27 agreement.  Postmates' motion to compel arbitration of all of Plaintiff Dora Lee's claims is

28 GRANTED.

United States District Court
Northern District of California

## IV.    ANALYSIS OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

### A.    Legal Standard

In general, when a party seeks to amend a pleading more than twenty-one days after serving it, or more than twenty-one days after service of a responsive pleading or motion, the party must obtain either the opposing party's consent or leave of the court. Fed. R. Civ. P. 15(a). The Federal Rules of Civil Procedure provide that "courts should freely give leave when justice so requires." *Id.* "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)) (alteration in original).

In the related context of timeliness for permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure, prejudice is evaluated based on the difference between a timely and untimely intervention, not based on the effect that intervention would have regardless of whether the intervenors had joined the case earlier. *See Kamakahi v. Am. Soc'y for Reprod. Med.*, No. 11-cv-01781-JCS, 2015 WL 1926312, at *4 (N.D. Cal. Apr. 27, 2015) (citing *Day v. Apolona*, 505 F.3d 963, 965 (9th Cir. 2007)).

### B.    Lee May Amend Her Complaint

Lee argues for the first time in her reply brief that leave to amend is not necessary here because Postmates has not filed a "responsive pleading" or a "motion under Rule 12(b), (e), or (f)," as is required to start the twenty-one-day deadline for amendment as a matter of course under Rule 15(a). *See* Reply re Amendment at 2. Lee relies in part on a short order in *Lawson v. Deliv, Inc.*, where another judge of this Court quoted a 1986 decision of the Ninth Circuit for the proposition that a "'motion to dismiss is not a "responsive pleading" within the meaning of the Rule,'" and therefore held that "no leave from this court was required in the first place" when the plaintiff sought to amend his complaint fifty days after the defendant filed a motion under Rule

1    12(b)(6).  *Lawson*, No. 18-cv-03632-VC,[6] ECF Doc. No. 26 (N.D. Cal. Sept. 7, 2018) (quoting

2    *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  This

3    Court respectfully disagrees with that decision.  Unlike in 1986, Rule 15 now explicitly includes

4    motions under Rule 12(b) as a basis for the deadline to amend by right.  *Schreiber* and the earlier

5    Ninth Circuit decisions on which it relied are therefore superseded by the new version of the Rule

6    and are no longer good law on this issue.

7          That alone does not resolve the issue here, as it is not clear that Postmates' motion to

8    compel arbitration is a motion under one of the enumerated subsections of Rule 12, which the

9    motion does not cite.  Some district court decisions have held that motions to compel under the

10   FAA do not start to clock for the amendment deadline.  *Croucier v. Credit One Bank*, N.A., No.

11   18cv20-MMA (JMA), 2018 WL 2836889, at *2 (S.D. Cal. June 11, 2018); *Stockade Cos., LLC v.

12   Kelly Rest. Grp., LLC*, No. 1:17-CV-143-RP, 2017 WL 2635285, at *1 (W.D. Tex. June 19, 2017).

13   Other courts have held that motions to stay can serve as a "responsive pleading" within the

14   meaning of the Rule, and some have considered such motions under various subsections of Rule

15   12(b).  *E.g.*, *Palcko*, 372 F.3d at 588 (holding as a matter of Third Circuit law that motions to

16   compel arbitration should be treated as motions to dismiss under Rule 12(b)(6)); *Armendariz v.

17   Ace Cash Exp.*, No. 3:13-CV-00590-BR, 2013 WL 3791438, at *3 (D. Or. July 19, 2013)

18   (collecting cases that "have concluded motions to compel arbitration are dispositive motions

19   and/or responsive pleadings that allow for amendment of the initial pleading under Rule

20   15(a)(1)(B)").  The Court declines to resolve whether Lee is entitled to amendment by right under

21   Rule 15(a)(1)(B), because even if she is not, the Court grants her leave to do so under Rule

22   15(a)(2).

23         Assuming for the sake of argument that Lee's right to amend expired twenty-one days after

24   Postmates filed its motion, Lee filed her motion for leave to amend only ten days after that

25   deadline.  A delay of only slightly more than a week, with Lee's motion filed well before

26

27   ───────────────
     [6] Both parties erroneously cite this case as case number 18-cv-0362, rather than -03632.  Reply re

28   Amendment at 2; Case Mgmt. Statement at 8.  The parties are reminded that incorrect citations, especially to unpublished decisions, complicate the Court's task of locating the sources on which the parties ask the Court to rely.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Postmates' motion had been decided, does not establish "undue delay" sufficient to overcome the

2    policy in favor of permissive amendment.

3         Postmates argues that the proposed amendment to explicitly seek "public injunctive relief"

4    is futile because the relief that she seeks is not in fact "public," and because the FAA and the Fleet

5    Agreement do not permit Lee to pursue such relief.  As discussed above, Lee likely can seek

6    public injunctive relief in arbitration under *Ferguson* and *McGill*, but that is a question for the

7    arbitrator to decide in the first instance.  Allowing Lee to clarify her claim before the case is sent

8    to arbitration poses no discernable prejudice to Postmates, and while the amendment does not alter

9    the requirement that Lee arbitrate, the Court is not persuaded that the necessity of arbitration in

10   itself renders the proposed amendment futile when Lee may be able to obtain the relief she seeks

11   in arbitration.

12        Postmates devotes much of its opposition brief to attacking Lee's position that other named

13   plaintiffs could bring her own claims out of arbitration under *Bickerstaff.*  Opp'n to Amendment at

14   4–7.  As discussed above, the Ninth Circuit has rejected *Bickerstaff* in this context, and adding

15   additional plaintiffs does not affect arbitration of Lee's own claims.  *See O'Connor*, __ F.3d at __,

16   2018 WL 4568553, at *4.  The proposed amendment therefore creates no prejudice to Postmates'

17   desire to arbitrate Lee's claims.  Nor is the Court persuaded that the arbitration of Lee's claim

18   renders amendment to add other plaintiffs who might not be subject to arbitration futile.

19   Arbitration of Lee's claim does not prevent Timmerman and Albert from pursuing their own

20   claims or seeking to represent a class of Postmates couriers who opted out of or are otherwise not

21   subject to arbitration, to the extent that such a class might exist.

22        Adding Timmerman and Albert as plaintiffs is neither futile nor prejudicial.  For the most

23   part, the burden on Postmates of responding to those plaintiffs' claims would have occurred

24   regardless of whether they had been included from the start, and thus cannot be said to result from

25   delayed amendment.  To the extent that Postmates might now be required to file two motions to

26   compel arbitration rather than one consolidated motion, the added burden is minimal, and much

27   the same as what would have occurred if Lee had filed the amended complaint within the twenty-

28   one days allowed by right after Postmates filed its motion.  Any burden from the amendment is

also no greater than what Postmates would face if leave to amend were denied and Timmerman and Albert filed their own separate action. Postmates has not shown that prejudice weighs in favor of denying the motion.

Finally, Postmates' argument that Lee and the putative additional plaintiffs lack a good faith basis for amendment is unavailing. Postmates notes that Albert is "particularly suspect, given that [he] signed up to be a courier *after* Postmates filed its motion to compel, completed his first delivery just three days before [Lee] filed her motion for leave to amend, and opted out the *same day* that Lee filed her motion." Opp'n to Amendment at 10 (citing Campbell Opp'n Decl. (dkt. 22-1) ¶ 15). Regardless of whether Albert signed up to work for Postmates for the purpose of joining this action, Postmates does not explain why denying leave to amend and prompting Albert to file a separate action is preferable to allowing amendment to add him as a plaintiff here, particularly given that his presence in the case will not affect the arbitrability of Lee's existing claims. Moreover, while it remains to be seen whether any class claims are viable, attempting to pursue such claims is not in itself an improper aim, and courts routinely permit the addition of new putative class representatives upon determination or argument that an existing named plaintiff is unable to represent the proposed class. *See, e.g.*, *Yucesoy v. Uber Techs., Inc.*, No. 15-cv-00262-EMC (N.D. Cal. Mar. 5, 2018) (permitting amendment years into litigation to allow the addition of plaintiff not subject to an arbitration clause); *Wixon v. Wyndham Resort Dev. Corp.*, No. C 07-02361 JSW, 2010 WL 424603, at *3 (N.D. Cal. Jan. 27, 2010) (granting leave to amend to add new named plaintiffs after adjudication of a class certification motion); *Amparan v. Plaza Home Mortg., Inc.*, No. C 07-4498 JF (RS), 2009 WL 2776486, at *2 (N.D. Cal. Aug. 28, 2009).

Lee's motion for leave to file her proposed first amended complaint is GRANTED. This order does not decide the question of whether either Timmerman or Albert is subject to the Fleet Agreement's arbitration provision, which Postmates may pursue in a separate motion.[7]

---

[7] Postmates argues in a footnote that Timmerman is required to arbitrate because, like Lee, she failed to opt out after agreeing to the 2017 Fleet Agreement, and thus had no renewed right to opt out after agreeing to the revised 2018 Fleet Agreement. *See* Opp'n to Amendment at 5 n.5.

United States District Court
Northern District of California

## V.      STAY PENDING ARBITRATION

The FAA provides that while arbitration is pending, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Nevertheless, the decision of whether "to stay litigation among the non-arbitrating parties pending the outcome of the arbitration . . . is one left to the district court . . . as a matter of its discretion to control its docket."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983).

Courts faced with circumstances similar to this case have declined to stay the claims of plaintiffs who opted out of arbitration while other plaintiffs were required to arbitrate.  *E.g.*, *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *5 (N.D. Cal. Oct. 11, 2017); *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016).  Judge Donato's reasoning in *McClellan* is persuasive:

> Arbitration is a matter of contract. Dunn opted out of arbitration in order to have access to courts. Requiring Dunn to stay his claims while the remaining plaintiffs proceed with arbitration would undermine the effect of the opt-out provision and improperly extend the arbitration agreement made by the other plaintiffs. Delayed enforcement of an opt-out right, just like belated enforcement of an arbitration provision, is "a less substantial interference than a refusal to enforce it at all, [but] nonetheless significantly disappoints the expectations of the parties and frustrates the clear purpose of their agreement." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 225 (1985) (White, J., concurring).
>
> Parallel proceedings may raise the risk of inconsistency, but the FAA contemplates "*requir[ing]* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20 (emphasis in original). Moreover, inconsistency is possible even if the Court were to grant a stay: Fitbit has not shown that the outcome of the arbitration proceedings will have any effect on this Court's consideration of Dunn's claims.

*McClellan*, 2017 WL 4551484, at *5 (alterations in original).  As in that case, to the extent that Timmerman and Albert might have validly opted out of arbitration, they have a right to bring their claims in court that should not be delayed without good reason, and it is not clear that a stay would prevent the risk of inconsistent outcomes.

## VI.      CONCLUSION

For the reasons discussed above, both Postmates' motion to compel arbitration of Lee's

United States District Court
Northern District of California

claims and Lee's motion for leave to file an amended complaint are GRANTED, except that Postmates' request to stay the claims of new plaintiffs Timmerman and Albert is DENIED.  Lee shall file the first amended complaint as a separate docket entry no later than October 22, 2018. Postmates shall respond to Timmerman and Albert's claims in that complaint by answer or motion in due course.

**IT IS SO ORDERED.**

Dated: October 15, 2018

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

23