SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

*Attorney for Plaintiffs Dora Lee, Kellyn Timmerman,
and Joshua Albert, on behalf of themselves and all
others similarly situated*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DORA LEE, KELLYN TIMMERMAN, and JOSHUA ALBERT, on behalf of themselves and all others similarly situated,<br><br>            Plaintiff,<br><br>        v.<br><br>POSTMATES INC.,<br><br>            Defendant. | Case No. 3:18-cv-03421-JCS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO (1) COMPEL ARBITRATION OF KELLYN TIMMERMAN'S CLAIMS AND (2) DISMISS JOSHUA ALBERT'S CLAIMS**<br><br>Hearing Date: December 14, 2018<br>Hearing Time: 9:30 a.m.<br>Hearing Place: Courtroom G<br>JUDGE: HON. JOSEPH SPERO |

1
2

## <u>TABLE OF CONTENTS</u>

3

I.      INTRODUCTION ................................................................................................... 1

4

II.     FACTUAL & PROCEDURAL BACKGROUND ......................................................... 2

5

III.    ARGUMENT ......................................................................................................... 3

6

        A.    Postmates Has Failed to Carry Its Burden to Establish that Its Arbitration
7
              Provision Was Reasonably Conspicuous ...................................................... 3

8

        B.    The Claims of Plaintiff and the Putative Class are Exempt Under the
              FAA Transportation Worker Exemption ....................................................... 6

9

           1.   Postmates Couriers Perform Services Pursuant to a "Contract of
10
                Employment" .............................................................................. 7

11

           2.   Postmates Couriers Are Transportation Workers Engaged in
                Interstate Commerce .................................................................... 7

12

        C.    Albert Adequately Pled His Claims ........................................................... 14
13

           1.   Business Expenses (Count I)......................................................... 15
14

           2.   Minimum Wage Violations (Count II)........................................... 16
15

           3.   Willful Misclassification (Count III)............................................. 17
16

           4.   Unlawful Business Practices (Count IV) ....................................... 17
17

           5.   Unpaid Wages (Count V)............................................................. 17
18

           6.   Breach of Contract (Count VI) ..................................................... 18
19

IV.     CONCLUSION .................................................................................................... 20

20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

Ajemian v. Yahoo! Inc.,
  83 Mass. App. Ct. 565 (2013)..........................................................................4

Alvarenga v. Carlson Wagonlit Travel, Inc.,
  2016 WL 466132 (E.D. Cal. Feb. 8, 2016)........................................................19

Ashcroft v. Iqbal,
  556 U.S. 662 (2009).......................................................................................14

Bacashihua v. U.S. Postal Serv.,
  859 F.2d 402 (6th Cir. 1988) ..........................................................................11

Bruni v. Didion,
  160 Cal. App. 4th 1272 (2008) ...................................................................1, 3

Byrd v. Masonite Corp.,
  2016 WL 756523 (C.D. Cal. Feb. 25, 2016) ....................................................17

Christie v. Loomis Armored US Inc.,
  2011 WL 6152979 (D. Co. Dec. 9, 2011) ....................................................8, 11

Circuit City Stores, Inc. v. Adams,
  532 U.S. 105 (2001).........................................................................................7

Cullinane v. Uber Technologies, Inc.
  893 F.3d 53 (1st Cir. 2018)..........................................................................4, 5

Davis v. USA Nutra Labs
  303 F. Supp. 3d 1183 (D.N.M. 2018)................................................................5

Dean Milk Co. v. F.T.C.,
  395 F.2d 696 (7th Cir. 1968) ..........................................................................10

Dynamex Operations West v. Superior Court
  4 Cal. 5th 903 (2018)......................................................................................17

Engalia v. Permanente Med. Grp., Inc.,
  15 Cal. 4th 951 (1997) ................................................................................1, 3

Foremost Dairies, Inc. v. F.T.C.,
  348 F.2d 674 (5th Cir. 1965) ..........................................................................10

Garrido v. Air Liquide Indus. U.S. L.P.
  241 Cal. App. 4th 833 (2015) ..........................................................................11

Gonzales v. Raich,
  545 U.S. 1, 33 (2005)......................................................................................11

Harden v. Roadway Package Sys., Inc.,
  249 F.3d 1137 (9th Cir. 2001) ..........................................................................7

Hill v. Rent-A-Ctr., Inc.,
   398 F.3d 1286 (11th Cir. 2005) ........................................................................... 10

In re Van Dusen,
   654 F.3d 838 (9th Cir. 2011) ................................................................................. 7

International Broth. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC,
   702 F.3d 954 (7th Cir. 2012) ............................................................................... 8, 9

Landers v. Quality Communications,
   771 F.3d 638 (9th Cir. 2014) ............................................................................... 16

Lawson v. Deliv, Inc.,
   No. 18-cv-3632-VC ............................................................................................. 17

Lenz v. Yellow Transp., Inc.,
   431 F.3d 348 (8th Cir. 2005) ......................................................................... passim

Levin v. Caviar
   146 F.Supp.3d 1146 (N.D. Cal. 2015) ......................................................... 2, 8, 10

Long v. Provide Commerce, Inc.
   245 Cal. App. 4th 855 (2016) ................................................................................ 4

Lopez v. Smith,
   203 F.3d 1122 (9th Cir. 2000) ............................................................................. 14

Mitchell v. Craftworks Restaurants
   2018 WL 5297815 (D.D.C. Oct. 25, 2018) ........................................................... 5

Muro v. Cornerstone Staffing Sols., Inc.
   20 Cal. App. 5th 784 (2018) ................................................................................ 11

Myers v. Uber Technologies, Inc.
   868 F.3d 66 (2d Cir. 2017) ..................................................................................... 5

Nghiem v. Dick's Sporting Goods, Inc.
   2016 WL 9131962 (C.D. Cal. July 5, 2016) .......................................................... 5

O'Connor v. Uber Technologies
   311 F.R.D. 547 (N.D. Cal. 2015) ......................................................................... 15

Oasis W. Realty, LLC v. Goldman,
   51 Cal. 4th 811 (2011) ......................................................................................... 19

Oliveira v. New Prime, Inc.,
   857 F.3d 7 (1st Cir. 2017) ...................................................................................... 7

Palcko v. Airborne Express, Inc.,
   372 F.3d 588 (3rd Cir. 2004) .......................................................................... 11, 12

Patterson v. Tenet Healthcare, Inc.,
   113 F.3d 832 (8th Cir. 1997) ............................................................................... 11

Ramirez v. Superior Court
   103 Cal. App. 3d 746 (1980) ................................................................................. 5

Rodriguez v. Cleansource, Inc.,
   2015 WL 5007815 (S.D. Cal. Aug. 20, 2015) ..................................................... 19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO (1) COMPEL ARBITRATION OF KELLYN
TIMMERMAN'S CLAIMS AND (2) DISMISS JOSHUA ALBERT'S CLAIMS
CIV. A. NO. 3:18-CV-03421-JCS

Rojo v. Kliger,
    52 Cal. 3d 65 (1990) ........................................................................................... 18

Scardino Milk Distribs., Inc. v. Wanzer & Sons, Inc.,
    71 C 693, 1972 WL 498 (N.D. Ill. Aug. 11, 1972) ........................................ 10

Seven-Up/RC Bottling Co. of S. Cal. v. Amalgamated Indus. Workers Union, Local 61,
    NFIU/LIUNA,
    183 F. App'x 643 (9th Cir. 2006) ............................................................ 8, 9, 10

Sgouros v. TransUnion Corp.
    817 F.3d 1029 (7th Cir. 2016) .............................................................................. 5

Siller v. L & F Distributors, Ltd.,
    109 F.3d 765 (5th Cir. 1997) .......................................................................... 9, 11

Sims v. AT&T Mobility Services LLC,
    955 F. Supp. 2d 1110 (E.D. Cal. 2013) ............................................................ 18

Specht v. Netscape Communications Corp.
    306 F.3d 17 (2d Cir. 2002) ................................................................................... 4

Stuart v. RadioShack Corp.,
    641 F. Supp. 2d 901 (N.D. Cal. 2009) .............................................................. 15

Talbot v. Lyft, Inc.
    Case No. CGC-18-566392 (Super. Ct. Cal. Oct. 19, 2018) ............................. 5

Tan v. GrubHub, Inc.,
    171 F. Supp. 3d 998 (N.D. Cal. 2016) .............................................................. 15

Veliz v. Cintas Corp.,
    2004 WL 2452851 (N.D. Cal. Apr. 5, 2004) .............................................. 10, 11

Villalpando v. Exel Direct Inc.,
    No. 12-CV-04137 JCS, 2014 WL 1338297 (N.D. Cal. Mar. 28, 2014) ............ 17

Wickard v. Filburn,
    317 U.S. 111 (1942) ............................................................................................. 11

Zamora v. Swift Transp. Co.,
    2008 WL 2369769 (W.D. Tex. June 3, 2008) ................................................... 12

**Statutes**

9 U.S.C. § 1 *et seq.* ................................................................................... 1, 3, 7

Cal. Code Civ. P. § 1280 ...................................................................................... 13

Cal. Lab. Code § 204 ............................................................................................ 17

Cal. Lab. Code § 226.8 ......................................................................................... 17

**Other Authorities**

Nancy S. Kim
    "Online Contracting," 72 Bus. Law 243 (2017) .............................................. 5

1

## I.  INTRODUCTION

2       In its Motion to (1) Compel Arbitration of Kellyn Timmerman's Claims and (2)

3   Dismiss Joshua Albert's Claims (Dkt. 36), Defendant Postmates asks this Court to compel

4   Plaintiff Kellyn Timmerman's class claims under the Labor Code to individual arbitration

5   pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* and to dismiss Plaintiff

6   Joshua Albert's claims for failure to state a claim. As set forth further below, Postmates'

7   Motion should be denied.

8       First, Postmates has failed to introduce sufficient evidence for this Court to determine

9   that a valid agreement to arbitrate exists.  Under California law, it is Postmates' burden to

10  establish the existence of a valid agreement to arbitrate, see Bruni v. Didion, 160 Cal. App. 4th

11  1272, 1282 (2008) (quoting Engalia v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 972

12  (1997)), and Postmates has simply failed to satisfy that burden here, as it has not introduced

13  screenshots or *any specific evidence* illustrating how the contract was actually presented to

14  couriers.[1]

15      Second, Plaintiff Timmerman and the putative class of Postmates couriers are not

16  bound to arbitrate because they are exempt from the Federal Arbitration Act ("FAA") under

17  the transportation worker exemption, 9 U.S.C. § 1.  As described below, Postmates couriers

18  qualify for this exemption from the FAA, because they transport goods in interstate

19  commerce.[2]

20  _____

21  [1]      While the Court previously held that a valid agreement to arbitrate existed on
    Postmates' motion to compel arbitration with respect to Plaintiff Dora Lee (Dkt. 31), Plaintiff
22  Timmerman urges the Court to consider the fact that Postmates has not carried its burden to
    prove an enforceable agreement.  In addition, unlike Plaintiff Lee, Plaintiff Timmerman is
23  presenting evidence that she was unaware of the arbitration provision the first time she
    accepted the agreement and only learned about it later (the second time an agreement was
24  presented to her) from her attorneys.  See infra, III.A.  Thus, Timmerman emphasizes again
    that it is Postmates' burden (which it has not carried) to establish that she unambiguously
25  assented to a clearly conspicuous arbitration provision.

26  [2]      While the Court rejected the argument that Postmates couriers are exempt from the
    FAA under the § 1 transportation worker exemption with respect to Plaintiff Lee (Dkt. 31),
27  Plaintiff Timmerman requests that the Court consider the further argument she makes here,
    which includes argument and evidence that the Court noted was absent from Plaintiff Lee's
28  opposition.  In particular, Ms. Timmerman submits here a declaration making clear that she has

Finally, the Court should deny Postmates' request to dismiss Plaintiff Albert's claims. He has adequately pled his claims, but if the Court believes any are not adequately pled, he should be permitted to amend.

## II. FACTUAL & PROCEDURAL BACKGROUND

Defendant Postmates is a delivery service that provides couriers, who can be hailed and dispatched through its mobile application and website, to deliver merchandise and food to its customers at their homes and businesses. See Dkt. 35 (First Amended Complaint) at ¶¶ 1, 10-12. Postmates' tagline is "Anything, anywhere, anytime. We Get it", and its website explains that customers can have food, groceries, alcohol, or anything else delivered from local restaurants and businesses. See Ex. A to Declaration of Shannon Liss-Riordan ("Liss-Riordan Decl."). Postmates couriers deliver the orders that Postmates customers place through its website and application.

Postmates requires couriers to provide their own motor vehicles, scooters, or bicycles to use for making deliveries. Dkt. 36-1, Ex. D § 6A. Postmates sets the pay for each delivery in its sole discretion based on various factors. FAC ¶ 19. Postmates communicates directly with customers and follows up with couriers if the customer complains that something was not delivered or that the delivery otherwise failed to meet their expectations. FAC ¶ 20. Postmates does not reimburse couriers for any expenses they may incur while working for Postmates, such as vehicle maintenance, gas, insurance, or phone and data expenses for running the Postmates application. FAC ¶ 21; Dkt. 36-1, Ex. D § 6A. It also does not guarantee that couriers will receive minimum wage for their work for Postmates, FAC ¶ 22, and it has not paid couriers for their time, as promised, spent waiting for orders to be completed, FAC ¶ 24.

Plaintiff Dora Lee filed this case on May 8, 2018, alleging that she and other Postmates couriers across California are misclassified as independent contractors and have suffered various wage violations as a result of their misclassification. Dkt. 1-1, Ex. B. On July 20,

---

delivered non-food goods (in contrast to the plaintiffs in Levin v. Caviar, 146 F.Supp.3d 1146, 1152 (N.D. Cal. 2015), who primarily delivered prepared meals), as well as argument as to why Postmates couriers should fall under the transportation worker exemption, in light of the eight factors set forth in Lenz v. Yellow Transp., Inc., 431 F.3d 348, 352 (8th Cir. 2005).

2018, Postmates filed a motion to compel individual arbitration of Ms. Lee's claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*  Dkt. 14.  Plaintiff then filed a motion to amend the complaint to add additional lead plaintiffs Kellyn Timmerman and Joshua Albert. Dkt. 15. As Postmates has acknowledged through its decision not to seek to compel Albert to arbitration (and statements its counsel made at the last hearing), Albert opted out of Postmates' arbitration clause.

On October 15, 2018, the Court issued an order granting Lee's motion to amend the complaint and granting Postmates' motion to compel arbitration of Lee's claims, but denying its request to stay the claims of the new plaintiffs.  Dkt. 31.  Lee filed the First Amended Complaint, which added Timmerman and Albert as lead plaintiffs, on October 22, 2018.  FAC, Dkt. 35.  Postmates has now filed the instant motion to compel Timmerman's claims to arbitration and dismiss Albert's claims.

## III. ARGUMENT

### A. Postmates Has Failed to Carry Its Burden to Establish that Its Arbitration Provision Was Reasonably Conspicuous

Although the Court earlier held that a valid agreement to arbitrate existed with respect to Plaintiff Lee, Timmerman respectfully emphasizes that Postmates bears the burden to show that couriers were reasonably made aware, or adequately put on notice, that they were agreeing to arbitrate any claims they had against the company.  As the party seeking to enforce the arbitration provision of its agreement, it is Postmates' burden to establish that the "reasonably conspicuous notice" and "unambiguously manifested assent" conditions – which are required for there to be a valid agreement to arbitrate – were met in this case.  See Bruni v. Didion, 160 Cal. App. 4th 1272, 1282 (2008) (quoting Engalia v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 972 (1997)) (requiring the party that attempts to compel arbitration to "bear[] the burden of proving the existence of a valid arbitration agreement.").

Postmates has introduced *no specific evidence* purporting to establish that Plaintiff Timmerman actually received sufficient notice or unambiguously agreed to the arbitration clause in its agreement.  Postmates did not introduce, for example, any screenshots showing the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO (1) COMPEL ARBITRATION OF KELLYN
TIMMERMAN'S CLAIMS AND (2) DISMISS JOSHUA ALBERT'S CLAIMS
CIV. A. NO. 3:18-CV-03421-JCS

manner in which the Fleet Agreement, and specifically the arbitration provision, were presented to couriers.  And, as shown from her Declaration (attached as Exhibit B to Liss-Riordan Decl.**)**, Timmerman does not even recall seeing an arbitration provision when she was first presented with a Postmates agreement.  She only became aware of an arbitration provision the *second* time she was presented with a Postmates agreement, which she learned from her attorneys.  Timmerman Decl. ¶ 4.[3]

As Plaintiff Lee noted in her opposition to Postmates' motion to compel arbitration, the First Circuit declined to enforce Uber's arbitration agreement (for customers) in <u>Cullinane v. Uber Technologies, Inc.</u>, 893 F.3d 53 (1st Cir. 2018), based upon the reasoning that, in order for a contract formed online to be valid, users of online platforms must receive "'[r]easonably conspicuous notice'" of the contract terms and must "'unambiguous[ly] manifest[] . . . assent to those terms." <u>Id.</u> at 61 (quoting <u>Ajemian v. Yahoo! Inc.</u>, 83 Mass. App. Ct. 565, 612 (2013)). Although the Court previously found <u>Cullinane</u> inapplicable because it was based on Massachusetts law (Dkt. 31 at p. 7-8), Timmerman notes that California law similarly requires a defendant to prove that an arbitration provision is reasonably conspicuous, in order for it to be enforceable.  <u>See Bruni</u> and <u>Engalia</u> <u>supra</u>.  <u>See also</u> <u>Long v. Provide Commerce, Inc.</u>, 245 Cal. App. 4th 855, 865 (2016) (noting "'[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility.'") (quoting <u>Specht v. Netscape Communications Corp.</u>, 306 F.3d 17, 35 (2d Cir. 2002) (applying California contract law to online agreement)); <u>Nguyen v. Barnes & Noble, Inc.</u>, 763 F.3d 1171, 1177 (9th Cir.

---

[3]     Upon learning (from her attorneys) that Postmates' agreement contained an arbitration provision, and that couriers could opt out of it, Timmerman attempted to opt out of arbitration. <u>See</u> Ex. C to Liss-Riordan Decl.  Postmates has argued that Timmerman's attempt to opt out of the agreement is not valid because the "opt-out" provision does not allow couriers to opt out of arbitration if they previously entered a substantially similar agreement without having opted out of arbitration at that time.  (Dkt. 23.)  However, if Timmerman was not presented with a sufficiently conspicuous arbitration provision the first time Postmates gave her an agreement to sign, she cannot be bound to arbitrate based on that agreement.  Given that arbitration can only be required if the parties agree to it, and Timmerman made clear the second time that she did not agree to arbitration, her attempt to opt out of the agreement once she became aware of it should be honored.

2014); Nghiem v. Dick's Sporting Goods, Inc., 2016 WL 9131962, at *3 (C.D. Cal. July 5, 2016) (using a "reasonably prudent user" standard to determine whether plaintiff was aware of the nature of the contract); Ramirez v. Superior Court, 103 Cal. App. 3d 746, 756 n.3 (1980) ("no agreement exists unless the parties signing the document act voluntarily and are aware of the nature of the document and have turned their attention to its provisions or reasonably should have turned their attention to its provisions."); Nancy S. Kim, "Online Contracting," 72 Bus. Law 243 (2017) ("Cases addressing contract formation in the online environment have generally held that there was assent to contract if there was "reasonable notice" and a "manifestation of assent.")

Further, a California state court has recently employed this analysis in refusing to enforce a version of Lyft's online arbitration agreement that it was not able to establish was sufficiently conspicuous to drivers.  See Talbot v. Lyft, Inc., Case No. CGC-18-566392 (Super. Ct. Cal. Oct. 19, 2018) (attached as Exhibit D to Liss-Riordan Decl.), at 4-8 (carefully examining – and including in the decision – screenshots showing the manner in which the arbitration agreement was presented to drivers and the manner in which they manifested assent, and finding that one version of the agreement did not provide reasonably conspicuous notice of the contract terms, and thus concluding that "Lyft fails to sustain its burden to show the existence of an agreement knowingly entered into by Garcia.")  Indeed, in other cases in which courts have considered, in recent years, whether online agreements are enforceable, courts have reviewed evidence such as screenshots showing exactly how the agreement was depicted, in order to determine if it was reasonably conspicuous.  See, e.g., Cullinane, 893 F.3d at 62-64; Myers v. Uber Technologies, Inc., 868 F.3d 66, 77-80 (2d Cir. 2017); Sgouros v. TransUnion Corp., 817 F.3d 1029, 1031 (7th Cir. 2016); Davis v. USA Nutra Labs, 303 F. Supp. 3d 1183, 1191 (D.N.M. 2018); Mitchell v. Craftworks Restaurants, 2018 WL 5297815, at *7 (D.D.C. Oct. 25, 2018).  Thus, the fact that Postmates has omitted such evidence from its motion is particularly telling.

As evidenced by Timmerman's declaration, she would have been unaware of the arbitration provision in Postmates' contract if her counsel had not pointed it out to her, and

1    she does not believe most couriers would have noticed the provision (or the ability to opt-out)

2    buried deep within the contract (page 10 of 17 pages).  Timmerman Decl. ¶¶ 4-6.  Here, where

3    Postmates has not even shown the Court how it presented the arbitration agreement to couriers

4    – for example, whether it was displayed on a screen they would have necessarily even seen (or

5    had sufficient notice was a screen they may have reason to try to access through a link, for

6    example by notifying them that an arbitration agreement was contained in the link) - the Court

7    does not have any basis on which to concluded that a noticeable, conspicuous, enforceable

8    agreement was presented and agreed to by Timmerman (or Postmates couriers generally).

9        Thus, as Postmates has failed to introduce *any evidence* regarding the manner in which

10   its agreement was presented to Timmerman, this Court should find it has not met its burden of

11   establishing a valid agreement to arbitrate.

12   ### B.  The Claims of Plaintiff and the Putative Class are Exempt Under the FAA Transportation Worker Exemption

13       Although the Court previously held that the transportation worker exemption of the

14   Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, does not apply to Postmates couriers (Dkt. 31)

15   with respect to Postmates' motion to compel Plaintiff Lee's claims to arbitration, Plaintiff

16   Timmerman respectfully requests that the Court consider the additional argument and

17   evidence she presents here.  Thus, in addition to the argument that Plaintiff Lee set forth in

18   opposition to Postmates' motion to compel arbitration regarding why she fell under the

19   transportation worker exemption (argument that Timmerman incorporates in full by reference

20   here, see Dkt 16), Timmerman asks the Court to consider also the evidence she submits here

21   regarding the nature of the goods that Postmates couriers deliver (which are not merely

22   prepared meals from restaurants), as well as her explanation and analysis of why Postmates

23   couriers should fall under the transportation worker exemption from the FAA, considering the

24   factors enunciated by the Eight Circuit in Lenz v. Yellow Transp., Inc., 431 F.3d 348, 352

25   (8th Cir. 2005).

26       As Plaintiff Lee set forth in her opposition (Dkt. 16), Section 1 of the FAA exempts

27   from the Act's coverage all "contracts of employment of seamen, railroad employees, or any

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO (1) COMPEL ARBITRATION OF KELLYN TIMMERMAN'S CLAIMS AND (2) DISMISS JOSHUA ALBERT'S CLAIMS
CIV. A. NO. 3:18-CV-03421-JCS

other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. To qualify for this exemption from the FAA, an individual must (1) work for a business pursuant to a "contract of employment," and (2) be a "transportation worker," who is "engaged in interstate commerce." See Harden v. Roadway Package Sys., Inc., 249 F.3d 1137, 1140 (9th Cir. 2001) (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118 (2001)).[4] Here, Plaintiff Timmerman and other Postmates couriers are exempt from the FAA because they perform services for Postmates pursuant to a "contract of employment", and they are clearly transportation workers, transporting prepared foods and drinks, as well as non-food goods, in the flow of interstate commerce.

### 1. Postmates Couriers Perform Services Pursuant to a "Contract of Employment"

Timmerman incorporates by reference the arguments made in Lee's opposition (Dkt. 16), and thus will not repeat the arguments made therein regarding couriers' work for Postmates pursuant to "contracts of employment." Timmerman simply notes that the U.S. Supreme Court heard argument earlier this term on the question of whether the "contract of employment" language of § 1 governs working relationships both for employees and independent contractors. Oliveira v. New Prime, Inc., 857 F.3d 7, 15 (1st Cir. 2017), cert. granted, 138 S. Ct. 1164 (2018). Based on the oral argument, it appears likely that the Supreme Court will affirm the First Circuit's approach in Oliveira, in which case it would not be necessary for the Court to make a preliminary determination as to whether Postmates couriers are employees or independent contractors.

### 2. Postmates Couriers Are Transportation Workers Engaged in Interstate Commerce

Further, Postmates couriers qualify for the transportation worker exemption to the FAA because they are transportation workers engaged in interstate commerce, as the couriers

---

[4] The question of whether a worker falls under the transportation worker exemption to the FAA is an issue to be decided by the Court and is not to be delegated to an arbitrator. See In re Van Dusen, 654 F.3d 838, 843 (9th Cir. 2011); Oliveira v. New Prime, Inc., 857 F.3d 7, 15 (1st Cir. 2017), cert. granted, 138 S. Ct. 1164 (2018).

1

2

are generally engaged in the flow of goods and services in interstate commerce by delivering

goods from restaurants and businesses to Postmates' customers.  See Seven-Up/RC Bottling

3

Co. of S. Cal. v. Amalgamated Indus. Workers Union, Local 61, NFIU/LIUNA, 183 F. App'x

4

643, 643–44 (9th Cir. 2006) (unpublished) (drivers delivering sodas were exempt from the

5

FAA pursuant to transportation worker exemption); International Broth. of Teamsters Local

6

Union No. 50 v. Kienstra Precast, LLC, 702 F.3d 954, 957 (7th Cir. 2012) (concrete delivery

7

driver was an interstate transportation worker); Christie v. Loomis Armored US Inc., 2011

8

WL 6152979, at *3 (D. Co. Dec. 9, 2011) (currency delivery driver was transportation worker

9

in interstate commerce).  In Lenz v. Yellow Transp., Inc., 431 F.3d 348, 352 (8th Cir. 2005),

10

the Eighth Circuit announced a multi-factor test for determining whether an employee is a

11

transportation worker who falls under the FAA exemption.  The Lenz factors are addressed

12

below.

13

        In addition, in its ruling with respect to Plaintiff Lee, the Court held that she had not

14

satisfied this portion of the exemption because she had not introduced evidence that the work

15

of Postmates couriers is "meaningfully related to the interstate flow of goods," Dkt. 31 at p.14.

16

However, Timmerman has now provided such evidence.  See Timmerman Decl. ¶¶ 7-11.  As

17

described in her declaration, as a Postmates courier, she has not simply delivered prepared

18

food, but she has frequently delivered non-food merchandise such as home goods, clothing,

19

and cigarettes (from such stores as Target and 7-Eleven), as well as groceries and liquor (from

20

stores such as Wal-Mart), and packaged foods (from restaurants) such as sodas and other

21

products like chips.  Timmerman Decl. ¶¶ 9-11.  Unlike prepared meals, which contain

22

ingredients that have been processed at restaurants[5], these items have clearly traveled

23

24

25

[5]     In Levin v. Caviar, 146 F. Supp. 3d 1146, 1152–55 (N.D. Cal. 2015), Judge Laporte
held that Caviar couriers, who primarily delivered prepared meals from restaurants, did not fall
under the transportation worker exemption, relying largely on the fact that the prepared food
that they delivered were not in the flow of interstate commerce because the restaurants'
transformation of the food ingredients into meals broke their interstate journey, meaning that
the couriers' delivery to customers was intrastate, rather than interstate.

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO (1) COMPEL ARBITRATION OF KELLYN
TIMMERMAN'S CLAIMS AND (2) DISMISS JOSHUA ALBERT'S CLAIMS
CIV. A. NO. 3:18-CV-03421-JCS

interstate without being altered by the restaurant or store from which the couriers deliver them and thus are still in the flow of interstate commerce.[6]  See Seven-Up/RC Bottling Co. of S. Cal., 183 F. App'x at 643–44 (unpublished) (drivers delivering sodas were exempt from the FAA pursuant to Section 1).  Moreover, it is not necessary that all goods that the workers are delivering are in the flow of interstate commerce.  See, e.g., Siller v. L & F Distributors, Ltd., 109 F.3d 765 (5th Cir. 1997) (finding interstate commerce where only "approximately 39% of the truckloads … contained some out-of-state products", noting that "even if the hauls contain only slight amounts of goods traveling in interstate commerce, they will be deemed interstate commerce in its entirety.").

Moreover, Plaintiff Timmerman urges the Court to consider the applicability of the transportation worker exemption through the lens of the multi-factor test set forth by the Eight Circuit in Lenz v. Yellow Transp., Inc., 431 F.3d 348, 352 (8th Cir. 2005).  In that case, the Eighth Circuit attempted to distill the caselaw surrounding this exemption into the following factors.  Under this test, no factor is determinative, and the Court may balance these considerations.  As discussed here, the transportation worker exemption for Plaintiff Timmerman (as well as Postmates couriers generally) is supported by practically all of the factors of this eight-factor test:

**First,** the Lenz test considers whether the employee works in the transportation industry.  Lenz, 431 F.3d at 352.  Postmates is a delivery company whose couriers are clearly engaged in the transportation of goods.  Thus, its couriers plainly work in the transportation industry.  See Kienstra Precast, LLC, 702 F.3d at 957 (concrete delivery driver was an

---

[6]       Pursuant to Fed. R. Evid. 201, the Court could take judicial notice of the fact that many of these goods originate outside of California, as well as within California.  But if the Court believes that more specific evidence would need to be submitted on this point, Plaintiffs should have the opportunity for discovery on this issue.  Plaintiffs do not believe, however, that such discovery should be necessary because it is an evident point that a large portion of goods that may be delivered to Postmates customers (such as home goods, clothing, cigarettes, groceries, liquor, and packaged foods) would not have originated in California.

interstate transportation worker); Seven-Up/ RC Bottling Co. of S. Cal., 183 F. App'x at 643–44 (unpublished) (soda delivery driver was transportation worker).

**Second,** the Lenz test considers whether the employee is directly responsible for transporting the goods in interstate commerce. Lenz, 431 F.3d at 352. There can be no question here that Postmates couriers are directly responsible for delivering the goods.

With respect to whether the goods are in interstate commerce, as discussed above, Timmerman is submitting here a declaration attesting to the fact that she has frequently delivered goods for Postmates that are not prepared meals and that are evidently in interstate commerce.

Even with respect to the prepared meals that Postmates couriers deliver, as Plaintiff Lee argued, the Court should not accept Postmates' argument that the prepared meals are no no longer in the flow of interstate commerce because the interstate journey of raw ingredients that are later transformed into prepared meals ends when those ingredients are delivered as inventory for local restaurants. A number of courts have recognized that when food products are transported across state lines, the processing and transformation of the raw goods in the state in which they are ultimately delivered do not end their interstate journey. See Dean Milk Co. v. F.T.C., 395 F.2d 696, 714-15 (7th Cir. 1968); Foremost Dairies, Inc. v. F.T.C., 348 F.2d 674, 676-78 (5th Cir. 1965); Glowacki v. Borden, Inc., 420 F. Supp. 348, 351, 353 (N.D. Ill. 1976) (holding that transformation of pasteurized milk to chocolate milk by adding "sugar, chocolate, and an emulsifier" did not transform the milk to such a degree as to end its interstate journey); Scardino Milk Distribs., Inc. v. Wanzer & Sons, Inc., 71 C 693, 1972 WL 498, at *5 (N.D. Ill. Aug. 11, 1972) (holding that transformation of milk into "four types of cottage cheese, three types of half & half, vanilla and chocolate ice milk mix and sour cream" did not end the milk's interstate journey).[7]

---

[7]     Some courts have stated that pizza delivery drivers may not be covered by the transportation worker exemption, and Judge Laporte cited those in her ruling in Levin, 146 F.Supp.3d at 1152, citing Hill v. Rent-A-Ctr., Inc., 398 F.3d 1286, 1289 (11th Cir. 2005), and Veliz v. Cintas Corp., 2004 WL 2452851, at *6-7 (N.D. Cal. Apr. 5, 2004). However, these cases referred to pizza delivery drivers in dicta. Moreover, an analysis of all of the Lenz factors shows why a holistic consideration of the applicability of the transportation worker

1    **Third,** the Lenz test considers whether the employee handles goods that travel

2    interstate.  Lenz, 431 F.3d at 352.  Again, as discussed with respect to the second factor,

3    Postmates couriers handle goods that have traveled interstate.

4         Postmates will argue (again) that its couriers do not actually cross state lines when

5    making deliveries and thus the couriers do not qualify for the exemption.  However, in order

6    to be "engaged in [interstate] commerce" so as to fall under the FAA §1 transportation worker

7    exemption, it is not necessary for the transportation workers themselves to have physically

8    crossed state lines themselves in order to deliver goods.  "[H]ad Congress intended the residual

9    clause of the exemption to cover only those workers who physically transported goods across

10   state lines, it would have phrased the FAA's language accordingly." Palcko v. Airborne

11   Express, Inc., 372 F.3d 588, 594 (3rd Cir. 2004); see also Christie, 2011 WL 6152979, *3;

12   Gonzales v. Raich, 545 U.S. 1, 33-34 (2005); Wickard v. Filburn, 317 U.S. 111, 124 (1942).

13   Rather, the relevant inquiry is whether the transportation worker is "actually involved within

14   the flow of interstate commerce." Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 836 (8th

15   Cir. 1997); see also Christie, 2011 WL 6152979, at *3 (quoting Siller v. L & F Distributors,

16   Ltd., 109 F.3d 765 765, (5th Cir. 1997) (workers who remain within the boundaries of state

17   are "engaged in interstate commerce" so long as they transport goods "'in the flow of

18   interstate commerce.'")).[8]  For instance, in Christie, the court held that a currency delivery

19   driver, who drove exclusively within the boundaries of a single state, was a transportation

20   worker operating in interstate commerce because currency is "a good that is undisputedly in

21   the stream of interstate commerce." 2011 WL 6152979, *3; see also Bacashihua v. U.S. Postal

22   Serv., 859 F.2d 402, 405 (6th Cir. 1988) (postal worker who did not cross state lines engaged

23
24   exemption is appropriate.  There is certainly a difference between Postmates couriers who
     clearly work in the ***delivery business***, for a transportation company, whereas pizza restaurants
     are in the pizza business, and pizza delivery forms only an incidental, not necessarily core, part
25   of their business.

26   [8]    While some courts have found that the transportation worker exemption applies in
     cases where the workers themselves have crossed state lines, see, e.g. Garrido v. Air Liquide
27   Indus. U.S. L.P., 241 Cal. App. 4th 833 (2015); Muro v. Cornerstone Staffing Sols., Inc., 20 Cal.
     App. 5th 784, 790-91 (2018), these courts have not held that the workers *must* cross state lines
28   in order for the exemption to apply.

in interstate commerce because postal workers are "responsible for dozens, if not hundreds, of items of mail moving in interstate commerce on a daily basis.") (internal quotation marks omitted).[9]

Here, Postmates couriers are likewise plainly involved in the facilitation of the transportation of goods to customers that may have originated across state lines.

**Fourth**, the Lenz test considers whether the employee supervises employees who are themselves transportation workers, such as truck drivers. Lenz, 431 F.3d at 352. Postmates couriers do not supervise other employees. However, this factor appears to be a factor that lends support to the exemption for workers who are supervisors, although not themselves directly engaged in transportation. This factor thus is a recognition that the exemption is broader than just employees who themselves transport goods. See supra note 10. The fact that Postmates couriers do not supervise employees who are transportation workers therefore does not undermine the applicability of the exemption to them.

**Fifth**, the Lenz test considers whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA. Lenz, 431 F.3d at 352. Plaintiffs do not contend that special arbitration existed for "gig economy" delivery couriers when Congress enacted the FAA. Indeed, the "gig economy" did not exist a century ago when the FAA was enacted, so Plaintiff submits this factor may not be strictly relevant here.

**Sixth**, the Lenz test considers whether the vehicle itself is vital to the commercial enterprise of the employer. Lenz, 431 F.3d at 352. Here, Postmates couriers' vehicles are

---

[9]    Several courts have also noted that "the employee need not actually transport the goods himself for the exemption to apply," demonstrating the kind of broad application that courts have given to the Supreme Court's definition of "transportation worker. See, e.g., Zamora v. Swift Transp. Co., 2008 WL 2369769, *6 (W.D. Tex. June 3, 2008) (terminal manager of large trucking company was exempt because his responsibilities were "critical to the operation of the trucks, the trucking terminal and the trucking company" which were "significant instrumentalities of interstate commerce"); Palcko, 372 F.3d at 590 (field services supervisor who monitored the performance of package delivery drivers was exempt as a transportation worker engaged in interstate commerce).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO (1) COMPEL ARBITRATION OF KELLYN TIMMERMAN'S CLAIMS AND (2) DISMISS JOSHUA ALBERT'S CLAIMS
CIV. A. NO. 3:18-CV-03421-JCS

vitally important, indeed necessary, to the commercial enterprise of Postmates.  Postmates
requires couriers to provide their own vehicles, and Postmates delivery services simply would
not occur without couriers' vehicles.  This factor strongly supports a finding that the
transportation worker exemption applies.

**Seventh**, the <u>Lenz</u> test considers whether a strike by the employee would disrupt
interstate commerce.  <u>Lenz</u>, 431 F.3d at 352.  Because Postmates is a national employer, not
merely a local one (such as a pizza restaurant), a strike by all Postmates couriers around the
country could very well disrupt interstate commerce.

**Eighth**, the <u>Lenz</u> test considers the nexus that exists between the employee's job duties
and the vehicle the employee uses in carrying out his duties (i.e., a truck driver whose only job
is to deliver goods cannot perform his job without a truck).  <u>Lenz</u>, 431 F.3d at 352.  Here, there
is an extremely close nexus between couriers' duties and the vehicle they use in carrying out
their duties.  Indeed, couriers would be unable to perform their job functions – of picking up
goods from one location and delivering them to another – without a vehicle.  This factor
weighs heavily in favor of application of the transportation worker exemption.

Thus, when viewed through the lens of the <u>Lenz</u> factors, Postmates couriers most
certainly fall under the transportation worker exemption to the FAA.  The sole purpose of the
couriers' work for Postmates is to transport goods, and many (if not all) of these goods are in
interstate commerce.  Indeed, it is difficult to see why Postmates couriers should *not* be
considered transportation workers.  Postmates is a large national employer whose purpose is
the delivery of goods (some, but not all, of which are prepared food).  Couriers such as
Timmerman are not like pizza delivery drivers, engaged in a fully local endeavor.  The Court
should hold that the exemption applies here.

Since the Court should recognize that Postmates couriers are exempt from the FAA, the
California Arbitration Act ("CAA"), Cal. Code Civ. P. § 1280, *et seq.* would apply here instead.
Under California state law, stripped of the overlay of federal FAA preemption, the arbitration

agreement would not be enforceable.[10]  Postmates therefore cannot rely on its arbitration agreement to compel Plaintiff Timmerman to arbitration or to avoid a class in this case.

### C.  Albert Adequately Pled His Claims

Contrary to Postmates' assertions, Plaintiff Albert has satisfied Rule 12(b)(6)'s pleading requirements by stating claims that are plausible on their face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To the extent the Court believes that any of the claims are not sufficiently pled, the Court should grant leave allowing Plaintiffs to amend.  See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (noting a court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

---

[10]     Under California law, the agreement would be unenforceable because it contains a class waiver and is being used to attempt to prevent any class claims from being pursued.  See Gentry v. Superior Court, 42 Cal. 4th 443, 466 (2007); Dkt. 36-1, Ex. D § 11B(ii) ("Postmates and Contractor mutually agree that any and all disputes or claims between the parties will be resolved in individual arbitration. The Parties further agree that by entering into this Agreement, they waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action, or to participate in any class and/or collective action, and an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action ("Class Action Waiver")).

Under Gentry, a class action waiver is unenforceable if a class action is "likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, based on four factors: the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' right to [unpaid wages] through individual arbitration."  Id. at 463.

Here, the Court should recognize that all four factors are present: individual couriers are likely to have relatively modest individual damages; there is a real potential for retaliation against couriers (as the Gentry Court noted, "retaining one's employment while bringing formal legal action against one's employer is not "a viable option for many employees," id. at 459); absent class members are not likely to be aware that their rights are being violated due to the individual nature of couriers' work; and the cost and time associated with pursuing an individual case present real world obstacles that are likely to dissuade (or prevent) many couriers from pursuing such a case.  Thus, under Gentry, Postmates' class action waiver is unenforceable.

Postmates' contract provides that, in the event that the class action waiver is found to be unenforceable (something that must be decided by a court, not an arbitrator, see Dkt. 36-1, Ex. D § 11B(iv)), couriers' claims must proceed in court rather than in arbitration, see Dkt. 36-1, Ex. D § 11B(xii).

### 1.   Business Expenses (Count I)

Albert has sufficiently pled his claim of unpaid business expenses in violation of California Labor Code § 2802.  To state such a claim, a plaintiff must "identif[y] the particular expenses that were not reimbursed and affirmatively allege[] that the expenses were part of the plaintiff's job duties." Tan v. GrubHub, Inc., 171 F. Supp. 3d 998, 1005 (N.D. Cal. 2016). Section 2802 does not impose, as Postmates implicitly asserts, any requirement that a plaintiff identify a specific instance in which he incurred an unpaid business expense or allege specific facts establishing that the expenses were required; all a plaintiff must allege is that the expenses were incurred and were necessary to the performance of the job.  Id. at 1005 (holding that allegation that drivers "were required to bear expenses related to 'their vehicles, gas, parking, phone data, and other expenses'" stated a claim for relief); O'Connor v. Uber Technologies, 311 F.R.D. 547 (N.D. Cal. 2015) (certifying class of Uber drivers on § 2802 claim based on same factual allegations made in this case), rev'd and remanded on other grounds, 909 F.3d 1087 (9th Cir. 2018). Here, Plaintiffs have alleged that "Postmates does not reimburse couriers for any expenses that they may incur while working for Postmates, including, but not limited to the cost of maintaining their vehicles, gas, insurance, and phone and data expenses for running the Postmates Application.  Couriers incurred these costs as a necessary expenditure to obtain employment with Postmates…" FAC ¶ 21.  This allegation is plainly sufficient to state a claim for relief under § 2802.

Postmates' argument that Albert was required to allege that Postmates knew or had reason to know that he incurred expenses without reimbursement is simply meritless.  The case cited by Postmates in support of this argument, Stuart v. RadioShack Corp., 641 F. Supp. 2d 901, 904 (N.D. Cal. 2009), does not speak to § 2802 pleading requirements at all; it stands only for the proposition that, at trial, there must be a showing that the employer was aware that expenses were being incurred in order to trigger an obligation to reimburse.  Moreover, Postmates is obviously aware that Albert (like all couriers) incurred vehicle, gas, insurance, and phone expenses, because Postmates requires couriers to provide their own vehicles and phones in order to work.  The Court should deny Postmates' request to dismiss Count I.

### 2.   Minimum Wage Violations (Count II)

Because Postmates couriers do not receive detailed pay records from which they can specifically calculate potential minimum wage violations, Plaintiffs should not be held to the standard that Postmates urges, requiring a detailed allegation of minimum wage violations.[11] However, if the Court were to require Plaintiff Albert to be more specific, and provide an estimate of a sample minimum wage violation he experienced (based upon his best recollection), he could amend his minimum wage allegation as follows (with the proposed amendment in bold):

> 22.  Postmates pays couriers a fee per delivery plus a certain amount of "boost pay."  Postmates has failed to ensure that its couriers receive the applicable state minimum wage for all hours worked, and couriers frequently do not average minimum wage for all hours worked, particularly given that customers' tips cannot count towards Postmates' minimum wage obligations.  **For example, from August 18, 2018, through August 22, 2018, Albert worked approximately 26 hours, for which he was paid a total of $193.77, yielding an average hourly rate of $7.45 per hour.  From this amount, he had to pay expenses for his car and phone, thus reducing his hourly pay even further below the state minimum wage of $11 per hour.  Not only was his average pay less than minimum wage for his work that week, but he received substantially less than minimum wage for a number of the hours he worked that week.**

Such an amendment would clearly satisfy the minimal FLSA pleading standards required by the Ninth Circuit's decision in Landers v. Quality Communications, 771 F.3d 638, 645 (9th Cir.  2014), as amended (Jan. 26, 2015) ("A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of [] wages she believes she is owed, or any other facts that will permit the court to find plausibility…").  Thus, rather than dismissing this claim, if the Court believes more detail is necessary, the Court should grant Plaintiffs leave to amend the minimum wage claim.

---

[11]    Further, at the time Plaintiffs moved to amend Albert into the case as a named plaintiff, he had only just begun working for Postmates and thus did not yet have any detailed information about how Postmates' policy of not ensuring minimum wage for its couriers was specifically affecting his wages.

### 3.  Willful Misclassification (Count III)

Postmates argues that Albert cannot maintain his claim that he was willfully misclassified, in violation of Labor Code § 226.8, after the California Supreme Court's decision in <u>Dynamex Operations West v. Superior Court</u>, 4 Cal. 5th 903 (2018).  While Albert recognizes that this Court has previously determined that there is no direct private right of action for willful misclassification under Labor Code § 226.8, <u>Villalpando v. Exel Direct Inc.</u>, 2014 WL 1338297, at *14–19 (N.D. Cal. Mar. 28, 2014), at least one judge in this District has recognized a private right of action under this section.  <u>See</u> <u>Lawson v. Deliv, Inc.</u>, No. 18-cv-3632-VC (Dkt. 26) (attached here as Exhibit E) (dismissing willful misclassification claim under § 226.8 with respect to one plaintiff who worked for the defendant only prior to the California Supreme Court's decision in <u>Dynamex</u>, 4 Cal. 5th 903, but allowing amendment to clarify that other plaintiff worked for the defendant after <u>Dynamex</u> was issued).

### 4.  Unlawful Business Practices (Count IV)

Because Albert stated a plausible claim for relief under § 2802 (and either has, or will following amendment, stated a plausible minimum wage claim), he has adequately alleged the predicate for a claim of unlawful business practices under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*  The Court should deny Postmates' request to dismiss Count IV.

### 5.  Unpaid Wages (Count V)

Albert alleges Postmates has violated Cal. Labor Code § 204 by failing to pay all wages due to couriers, because Postmates does not ensure that couriers are paid the correct amount for their "wait time."  FAC ¶ 24.  In arguing that Albert failed to state a claim for unpaid wages Postmates cites <u>Byrd v. Masonite Corp.</u>, 2016 WL 756523 (C.D. Cal. Feb. 25, 2016), in which the court dismissed an unpaid wage claim as inadequately pled because the complaint merely "recite[d] the statutory language setting forth the elements of the claim." *Id.* at *4.  The complaint alleged only that "[d]uring the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them," without any details about how the defendants failed to pay all wages owed. *Id.*  Here, unlike in <u>Byrd</u>,

Albert has alleged specifically that Postmates' contract with couriers includes a payment schedule for each market specifying the amount-per-minute that they are to be paid for waiting time and that Postmates has failed to ensure that couriers are paid the correct amount for their wait time.  FAC ¶ 24.

Contrary to Postmates' contention that Albert did not specify his methods for calculating the correct amount for wait time, the First Amended Complaint specifically alleges that the amount is "typically between 7 and 12 cents per minute."  FAC ¶ 24.  And contrary to Postmates' claim that Albert failed to explain what he believes the compensable "waiting time" to be, the First Amended Complaint is clear on this issue, alleging: "The payment schedule for each market specifies a rate of cents per minute that couriers are to be paid **while waiting at the delivery pickup, known as 'wait time.'**"  FAC ¶ 24 (emphasis added).  It is obvious that Albert alleges that the compensable waiting time is the time spent waiting at the merchant. The Court should deny Postmates' request to dismiss Count V.

### 6.  Breach of Contract (Count VI)

Albert alleges that Postmates' failure to pay couriers the proper payment for their "wait time" constitutes a breach of contract.  FAC ¶ 38.  Postmates argues that Albert's contract claim must be dismissed because it is superseded by his Labor Code § 204 claim (which, of course, Postmates also moves to dismiss).  In California, "where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive."  Rojo v. Kliger, 52 Cal. 3d 65, 79 (1990). Postmates cites cases in which courts have held that plaintiffs cannot maintain common law conversion claims for unpaid wages because the Labor Code provides a "comprehensive and detailed remedial scheme," in support of its argument that the Labor Code is Albert's exclusive statutory remedy for unpaid wages.

However, Postmates conspicuously fails to address the conflicting line of cases finding that the Labor Code does not create an exclusive remedy for unpaid wages and that plaintiffs can maintain non-statutory claims for unpaid wages, because such claims existed at common law.  In Sims v. AT&T Mobility Services LLC, 955 F. Supp. 2d 1110 (E.D. Cal. 2013), the

court found that common law claims of breach of contract for unpaid wages in California predated the Labor Code and thus that codification of the preexisting right to recover unpaid wages created an additional remedy, not a replacement of common law remedies.  Id. at 1117. The court found the line of cases on which Postmates now relies to be unpersuasive, because they did not even acknowledge the availability of an action to recover unpaid wages at common law.  Id.  Other courts have followed Sims and held that the Labor Code does not create an exclusive remedy for an unpaid wage claim.  See, e.g., Alvarenga v. Carlson Wagonlit Travel, Inc., 2016 WL 466132, at *4 (E.D. Cal. Feb. 8, 2016) ("Although the California Labor Code creates a comprehensive and detailed remedial scheme, because remedies existed at common law to recover unpaid or underpaid wages, and because the Labor Code sections at issue are not explicitly exclusive, the remedies provided by the Labor Code supplement, rather than supplant, the common law remedies."); Rodriguez v. Cleansource, Inc., 2015 WL 5007815 (S.D. Cal. Aug. 20, 2015)).  Albert submits that the Sims line of cases is more persuasive than Postmates' favored cases and thus that this Court should find that common law breach of contract claims can coexist with Labor Code claims for unpaid wages. Notably, Postmates does not even point to a single case finding that a plaintiff cannot maintain a breach of contract claim for unpaid wages; it cites only cases involving the tort of conversion.

Moreover, Postmates denies in this case that its couriers are employees and that they would even be protected by the Labor Code.  While Plaintiffs submit that they are employees covered by the Labor Code, they should be permitted to also argue (in the alternative) that they have not been paid as promised under a contract theory.  It is nonsensical for Postmates to argue, on the one hand, that Albert is not an employee entitled to the protections of the Labor Code, and, on the other hand, that he is limited to remedies under the Labor Code.

Plaintiffs have alleged all four elements of a breach of contract claim: 1) existence of a contract; 2) plaintiff's performance; 3) defendant's breach; 4) resulting damages.  See Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811 (2011).  Their allegation regarding the existence of a contract requiring payment for wait time reads as follows:

Postmates' contract with couriers provides that Postmates pays couriers 'per

completed Delivery in the amount listed in the payment schedule for the relevant type of delivery and/or relevant market.' The payment schedule for each market specifies a rate of cents per minute that courier are to be paid while waiting at the delivery pickup, known as "wait time", which is typically between 7 and 12 cents per minute.  However, Postmates has failed to ensure that couriers are paid the correct amount for their wait time and has shortchanged couriers by underreporting the amount of time that couriers spend waiting for a delivery.

FAC ¶ 24.  This paragraph encompasses allegations of all elements of a breach of contract claim: 1) a contract to pay a certain amount per minute for wait time; 2) that couriers spend time waiting at the pickup location; 3) that Postmates does not pay the contractual amount for wait time; and 4) that couriers are damaged by being underpaid for their wait time.  The Court should deny Postmates' request to dismiss Count VI.

## IV. CONCLUSION

Postmates' request to compel Plaintiff Timmerman to arbitration should be denied because Postmates has not met its burden to establish that the arbitration agreement was presented to her (and other couriers) in a reasonably conspicuous manner and that she clearly manifested assent.  Moreover, Timmerman, like all Postmates couriers, is exempt from the FAA under the transportation worker exemption (and California law, stripped of federal preemption, does not allow enforcement of an arbitration clause such as this one containing a class action waiver).

Postmates' request to dismiss Plaintiff Albert's claims should similarly be denied, because Albert adequately alleged his claims, or should be granted leave to amend any claims for which the Court believes additional detail is required.

For all these reasons, Postmates' Motion should be denied.

Dated:          November 19, 2018          Respectfully submitted,

DORA LEE, KELLYN TIMMERMAN, and
JOSHUA ALBERT, on behalf of themselves and
all others similarly situated,

By their attorneys,

*s/ Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served by electronic filing on
November 19, 2018, on all counsel of record.

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO (1) COMPEL ARBITRATION OF KELLYN
TIMMERMAN'S CLAIMS AND (2) DISMISS JOSHUA ALBERT'S CLAIMS
CIV. A. NO. 3:18-CV-03421-JCS