SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:      (617) 994-5801

*Attorney for Plaintiff Joshua Albert, in his
capacity as Private Attorney General
Representative*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSHUA ALBERT, in his capacity as Private Attorney General Representative, <br><br> Plaintiff, <br><br> v. <br><br> POSTMATES INC., <br><br> Defendant. | Case No. 3:18-cv-07592-JCS <br><br> **THIRD AMENDED COMPLAINT** <br><br> 1. FAILURE TO REIMBURSE FOR BUSINESS EXPENSES (CAL. LAB. CODE § 2802) <br> 2. MINIMUM WAGE (CAL. LABOR CODE §§ 1194, 1197) <br> 3. UNLAWFUL AND/OR UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §§17200-17208) <br> 4. PRIVATE ATTORNEYS GENERAL ACT (PAGA) CLAIM FOR CIVIL PENALTIES (CAL. LABOR CODE § 2698 *et seq.*) <br> 5. DECLARATORY JUDGMENT (28 U.S.C. §§2201-02) |

**I.      INTRODUCTION**

1.      Postmates Inc. ("Postmates") provides on-demand delivery of food and merchandise to customers at their homes and businesses through its mobile phone application and website.  Postmates is based in San Francisco, California, but it does business across the United States and extensively throughout California.

2.      As described further below, Postmates has willfully misclassified its drivers, including Plaintiff Joshua Albert.  Because of drivers' misclassification as independent contractors, Postmates has unlawfully required drivers to pay business expenses (such as for their gas, vehicle maintenance, and phone/data expenses) in violation of Cal. Lab. Code § 2802 and has also failed to pay required minimum wage for all hours worked in violation of Cal. Lab. Code §§ 1197 and 1194.  Pursuant to the Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2699, Plaintiff Albert brings a representative claim on behalf of the state of California and all similarly situated Postmates drivers, seeking penalties provided for under the California Labor Code.

**II.      PARTIES**

3.      Plaintiff Joshua Albert is an adult resident of Los Angeles, California, and is a citizen of California.  He has worked as a driver for Postmates.

4.      Defendant Postmates, Inc. ("Postmates") is a Delaware corporation, headquartered in San Francisco, California.

**III.      JURISDICTION**

5.      The Court has personal jurisdiction over the Defendant because it does business in the State of California, and its conduct in the State of California underlies all claims in this suit.

6.      The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this case was severed from Lee v. Postmates, Inc., No. 18-cv-04321-JCS (N.D. Cal.), which Defendant removed from state court, as the case was a putative class action of at least 100 members with an amount in controversy exceeding $5 million in aggregate, where at least one member of the putative class is a citizen

of a different state from the Defendant.  See Grupo Dataflux v. Atlas Glob. Grp., *L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'") (quoting Mollan v. Torrance, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)); see also Dkt. 61 at 4.

7.     An actual controversy exists between the Parties within the meaning of 28 U.S.C. § 2201, which is of sufficient immediacy to warrant declaratory relief.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the unlawful labor practices giving rise to Plaintiff's claims were committed in this judicial district.

## IV.   **STATEMENT OF FACTS**

9.     Postmates is a San Francisco-based delivery service, which engages drivers across the state of California to deliver food and other merchandise to its customers at their homes and businesses.

10.    Some of the food and merchandise that drivers deliver to customers originates across state lines.

11.    Postmates offers customers the ability to order food and other items via a mobile phone application or via its website, which Postmates drivers then deliver to customers.

12.    Postmates holds itself out to the public as a delivery service.  Its website homepage advertises that it offers customers "Anything, anywhere, anytime."  Postmates' website also promotes its "Postmates Unlimited" service where customers can subscribe and receive unlimited free deliveries, touting "Pay once, free delivery all year."  Its website also boasts that "Postmates is transforming the way goods move around cities by enabling anyone to have anything delivered on-demand."

13.    Plaintiff Joshua Albert worked as a delivery driver for Postmates in August 2018.

14.    Postmates classifies its drivers, including Albert, as "independent contractors," but under California law, they should be classified as employees.

15.    As a Postmates driver, Albert performed services within Postmates' usual course of business as a delivery service. The services of drivers such as Albert are fully integrated into

Postmates' business. Without drivers such as Albert to perform deliveries, Postmates would not exist.

16.    Postmates drivers, including Albert, are not engaged in their own delivery business. When delivering items for Postmates customers, they wear the "hat" of Postmates.

17.    In addition, Postmates had the right to control Albert's performance as a driver (like all of its drivers), and exercised detailed control over him.

18.    Postmates unilaterally set the pay scheme and rate of pay for Albert's services, as it does for all drivers' services, and was entitled to change the rate of pay in its sole discretion.

19.    Postmates communicates directly with customers and follows up with drivers, including Albert, if a customer complains that something was not delivered or that the delivery otherwise failed to meet their expectations. Based on any customer feedback, Postmates may suspend or terminate drivers.  Indeed, Postmates terminated Albert on August 30, 2018, claiming that it was because his customer rating fell below a certain metric.

20.    Postmates does not reimburse drivers for any expenses they may incur while working for Postmates, and it did not reimburse Albert for any of the expenses he incurred, including, but not limited to the cost of maintaining his vehicle, gas, insurance, and phone and data expenses for running the Postmates Application.

21.    During the period in August 2018 when he drove for Postmates, Albert incurred costs for the use of his vehicle, including for gas and car insurance, as well as phone and data expenses that he would not have incurred if he had not worked for Postmates.  Albert incurred phone and data charges while using his smartphone to run the Postmates Application. Postmates was aware that Albert incurred these charges because the "Fleet Agreement" requires couriers to agree that Postmates may send them delivery updates and other communication via SMS and push notification.  See also Dkt. 61 at 7.  Albert also incurred vehicle use costs while using his vehicle to perform Postmates deliveries.  In order to sign up to deliver with Postmates, couriers are required to indicate on the Postmates Application how they plan to make deliveries (e.g., using a vehicle, bicycle, or on foot).  Albert informed Postmates that he would make deliveries by car and provided his driver's license number so that Postmates could perform a

1  background and driving record check.  Albert would have been required to inform Postmates if

2  he wished to change the manner in which he made deliveries, and he did not do so.  Postmates

3  was therefore aware that Albert incurred expenses as a result of using his vehicle to make

4  deliveries for Postmates.  Postmates is aware that its drivers such as Albert incur these expenses,

5  as all couriers who use their vehicles to make deliveries must inform Postmates of how they will

6  make deliveries, and Paragraph 6 of Postmates' agreement with drivers requires them to provide

7  all of the equipment necessary to perform deliveries.  California law requires employers to

8  reimburse business expenses necessary for employees to perform their jobs.

9      22.    Postmates pays drivers a fee per delivery plus a certain amount of "boost pay."

10  Postmates has failed to ensure that its drivers, including Albert, receive the applicable state

11  minimum wage for all hours worked, and drivers frequently do not average minimum wage for

12  all hours worked, particularly given that customers' tips cannot count toward Postmates'

13  minimum wage obligations.

14      23.    For example, from August 18, 2018, through August 22, 2018, Albert worked

15  approximately 26 hours, for which he was paid a total of $193.77, yielding an average hourly

16  rate of $7.45 per hour. From this amount, he had to pay expenses for his car and phone, thus

17  reducing his hourly pay even further below the state minimum wage of $11 per hour.  Not only

18  was his average pay less than minimum wage for his work that period, but he received

19  substantially less than minimum wage for a number of the hours he worked during that period.

20      24.    On April 30, 2018, the California Supreme Court issued its decision in Dynamex

21  Operations W., Inc. v. Superior Court, No. S222732, 2018 WL 1999120 (Cal. Apr. 30, 2018),

22  which makes clear that Postmates drivers (including Albert) should be classified as employees

23  rather than as independent contractors under California law for purposes of wage-and-hour

24  statutes like the ones at issue here.  Notwithstanding this decision, Postmates has willfully

25  continued to misclassify its drivers as independent contractors, and indeed Albert was

26  misclassified by Postmates when he worked for the company in August 2018.

27

28

## V.   PAGA REPRESENTATIVE ACTION ALLEGATIONS

25.   On December 4, 2018, Albert gave written notice of Postmates' violations of various provisions of the California Labor Code as alleged in this complaint to the Labor and Workforce Development Agency ("LWDA") as well as to Postmates. The LWDA has not provided any notice that it will or will not investigate the alleged violations.

26.   Plaintiff alleges that Postmates violated PAGA in the following ways: (1) failure to reimburse its drivers for all necessary expenditures incurred in performing their duties, including but not limited to fuel, car maintenance, phones, and data, in violation of Labor Code § 2802; (2) failure to ensure that drivers are paid minimum wage, in violation of Labor Code §§ 1197 and 1194; and (3) willful misclassification of driver employees in violation of Cal. Lab. Code § 226.8.

**COUNT I**
**Expense Reimbursement**
**Violation of Cal. Lab. Code § 2802**

27.   Defendant's conduct, as set forth above, in misclassifying Postmates drivers such as Albert as an independent contractor, and failing to reimburse him (like other drivers) for expenses he paid that should have been borne by his employer, constitutes a violation of California Labor Code Section 2802.

**COUNT II**
**Minimum Wage**
**Violation of Cal. Lab. Code §§ 1197 and 1194**

28.   Defendant's conduct, as set forth above, in failing to pay Albert (like other drivers) minimum wage for all hours worked as required by California law, violates Cal. Lab. Code §§ 1197 and 1194.

**COUNT III**
**Unlawful Business Practices**
**Violation of Cal. Bus. & Prof. Code §17200, *et seq*.**

29.   Defendant's conduct, as set forth above, violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"). Defendant's conduct constitutes unlawful business acts or practices, in that Defendant has violated California Labor

Code §§ 2802, 1194, 1197, and 226.8.  As a result of Defendant's unlawful conduct, Plaintiff (like other drivers) suffered injury in fact and lost money and property, including, but not limited to business expenses that he was required to pay and wages that he was due. Pursuant to California Business and Professions Code § 17203, Plaintiff seeks declaratory and injunctive relief for Defendant's unlawful conduct and to recover restitution. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff is entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

## COUNT IV
## Penalties Pursuant to the Labor Code Private Attorneys General Act of 2004
## (Representative Action)
### Violation of Cal. Lab. Code §§ 2698 *et seq.*, § 558

30.     Plaintiff is an aggrieved employee as defined by Cal. Lab. Code § 2699(c) as he was employed by Postmates during the applicable statutory period and suffered injury as a result of Postmates' Labor Code violations.  Accordingly, Plaintiff seeks to recover on behalf of the State of California, as well as himself and all other current and former aggrieved employees of Postmates who have worked in California, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

31.     Postmates drivers are entitled to penalties for Postmates' violations of Cal. Lab. Code § 2802, § 1194, § 1197, and § 226.8, as set forth by Cal. Lab. Code § 2699(f) and § 558. Plaintiff seeks civil penalties pursuant to PAGA for (1) failure to reimburse driver employees for all necessary expenditures incurred in performing their duties, including but not limited to owning or leasing and maintaining their vehicles, fuel, phones, and data, in violation of Cal. Lab. Code § 2802; (2) failure to assure that all drivers receive minimum wage for all hours worked, in violation of Cal. Lab. Code §§ 1194 and 1197; and (3) willful misclassification of driver employees in violation of Cal. Lab. Code § 226.8.

32.     Cal. Lab. Code § 2699(f) provides for civil penalties for violation of all Labor Code provisions for which no civil penalty is specifically provided.  There is no specified civil penalty for violations of Cal. Lab. Code § 2802.  With respect to minimum wage violations under Cal. Lab. Code §§ 1194 and 1197, § 1197.1 imposes a civil penalty in addition to any

other penalty provided by law of one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid in addition to an amount sufficient to recover unpaid wages and liquidated damages, and, for each subsequent violation of Labor Code §§ 1194 and 1197, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid in addition to an amount sufficient to recover unpaid wages and liquidated damages. With respect to violations of Labor Code § 226.8, § 226.8(b) imposes a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation.

33.    Plaintiff complied with the notice requirement of Cal. Lab. Code § 2699.3 and mailed a written notice to the California Labor & Workforce Development Agency ("LWDA"), and Defendant, via Certified mail, return receipt requested, on December 4, 2018. The LWDA has not provided any notice that it will or will not investigate the alleged violations.

**COUNT V**
**Declaratory Judgment**
**28 U.S.C. §§2201-02**

34.    An actual controversy of sufficient immediacy exists between the Parties as to whether Postmates has failed to comply with its obligations under the California Labor Code, as described above.

35.    Postmates' conduct in misclassifying its drivers, including Albert, as independent contractors and failing to ensure that they are reimbursed for their necessary expenditures and that its drivers receive minimum wage for all hours worked contravenes California state law.

36.    As a result of the factual allegations above, Plaintiff (and all Postmates drivers) have suffered actionable harm, as they are not properly compensated for their work for Postmates.

37.    Plaintiff seeks an order of this Court pursuant to 28 U.S.C. §§2201-02 and Fed. R. Civ. P. 57 declaring that, as a result of its misclassification of its drivers, Postmates has violated the California Labor Code and declaring that Postmates must comply with the Labor Code.

38.     The injunction that Plaintiff seeks is in the nature of a public injunction and is not solely for the benefit of Postmates drivers.  Instead, ordering Postmates to comply with the California Labor Code is in the public interest because Postmates' violation of the Labor Code diminishes labor standards more generally in the California economy and particularly in the delivery industry.  Complying competitors are put at a disadvantage when companies such as Postmates flout the Labor Code by misclassifying their employees as independent contractors. Public funds are also impacted by these violations because the state incurs costs in supporting and providing services to employees who are not properly paid and do not even receive minimum wage.  The California Supreme Court made a strong statement in the recent <u>Dynamex</u> decision of the importance to the public good of employers properly classifying their workers as employees, and that public interest is harmed by an employer such as Postmates ignoring the decision and continuing to classify its employees as independent contractors.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

a.  Declare and find that the Defendant violated the UCL and Cal. Lab. Code §§ 2802, 1194, 1197, 226.8, and 558;

b.  Award compensatory damages, including all expenses and wages owed, in an amount according to proof;

c.  Enter judgment in Plaintiff's favor on his PAGA claim pursuant to Cal. Labor Code § 2699(c);

d.  Award penalties in an amount according to proof;

e.  Declare that Defendant's actions described in this Complaint violate the rights of Plaintiff;

f.  Issue a public injunction in the form of an order requiring Defendant to comply with the California Labor Code;

g.  Award pre- and post-judgment interest;

h.  Award reasonable attorneys' fees, costs, and expenses; and

i.  Order any other relief to which the Plaintiff may be entitled.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

JOSHUA ALBERT, in his capacity as Private Attorney General Representative,

By his attorney,

 _/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, SBN 310719
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com

Dated:          March 15, 2019